444 F.2d 353
 Dorothy BRYANT, individually and on behalf of her four minor
children, et al., Appellees,
v.
Robert CARLESON, as Director of the Department of Social
Welfare of the Stateof California, Appellant.
 No. 26898.
 United States Court of Appeals, Ninth Circuit.
 May 27, 1971.
 
 Elizabety Palmer, Deputy Atty. Gen. (argued) Evelle J. Younger, Atty. Gen. of the State of California, San Francisco, Cal., for appellant.
 Peter E. Sitkin, San Francisco, Cal. (argued), Ralph Santiago Abascal, Marysville, Cal., Sidney M. Wolinsky, of San Francisco Neighborhood Legal Assistance Foundation, San Francisco, Cal., for appellees.
 L. Patrick Gray, III, Asst. Atty. Gen., Morton Hollander, Raymond D. Battocchi, Attys., Dept. of Justice, Washington, D.C., Joel Cohen, Asst. Gen. Counsel, Myron J. Berman, Deputy Asst. Gen. Counsel, Dept. of Health, Education & Welfare, Washington, D.C., Stephanie W. Naidoff, Asst. Regional Atty., Dept. of HEW, James L. Browning, Jr., U.S. Atty., San Francisco, Cal., for amicus curiae.
 Before CHAMBERS and HAMLEY, Circuit Judges, and GOODWIN, District judge.*
 HAMLEY, Circuit Judge:
 
 
 1
 On August 6, 1969, Dorothy Bryant, Mary Frierson, Beverly Young and Rosalie Boehme brought this class action against John C. Montgomery, the then Director of the Department of Social Welfare, State of California. Montgomery has since been succeeded by Robert Martin, and he, by Robert B. Carleson. Plaintiffs' purpose in bringing the action was to obtain declaratory and injunctive relief because, with respect to welfare aid to families with dependent children (AFDC), California had allegedly failed to comply with the Congressionally prescribed prerequisites to receipt of federal matching funds. Plaintiffs further contended that they were being denied equal protection of the laws, as guaranteed by the Fourteenth Amendment.
 
 
 2
 The federal statute in question is paragraph (23) of section 402(a) of the Social Security Act (Act), 42 U.S.C. 602(a)(23), added by section 213(b) of the Social Security Amendments of 1967, 81 Stat. 821, 898, reading as follows:
 
 
 3
 '; and (23) provide that by July 1, 1969, the amounts used by the State to determine the needs of individuals will have been adjusted to reflect fully changes in living costs since such amounts were established, and any maximums that the State imposes on the amount of aid paid to families will have been proportionately adjusted.'[1]
 
 
 4
 Plaintiffs predicated district court jurisdiction on 28 U.S.C. 1331 (federal question), 28 U.S.C. 1337 (regulation of commerce and antitrust regulations), and 28 U.S.C. 1343 (civil rights actions). Since plaintiffs sought to restrain the enforcement of section 11450(a) of the California Welfare and Institutions Code[2] on federal constitutional grounds, 'to the extent that it denies plaintiffs * * * annual cost of living increases in their welfare payments * * *' plaintiffs asked that a three-judge district court be convened pursuant to 28 U.S.C. 2284(1). A three-judge court was designated on September 24, 1969.
 
 
 5
 Opposing counsel thereafter stipulated that the district judge in whose court the suit was instituted might proceed to decide the non-constitutional claims concerning the state's alleged non-compliance with section 402(a)(23) of the Act, and that the determination of the constitutional claims by the three-judge court should be held in abeyance. The single district judge accepted the stipulation and so ordered. References hereinafter to the district court refer to this single-judge district court unless otherwise indicated.
 
 
 6
 A hearing before the district court was held on September 10, 1970, upon plaintiffs' motion for partial summary judgment and a preliminary injunction. As a result of this hearing that court rendered a partial summary judgment on September 11, 1970, which is summarized in the margin.[3] The matter was continued to October 29, 1970, to allow defendant to demonstrate his compliance with the terms of this judgment and to permit determination of the validity, under the federal law, of any proposal that defendant might submit.
 
 
 7
 On the latter date, defendant filed with the district court a document entitled 'Compliance with Partial Summary Judgment of September 11, 1970.' In this document defendant recounted several recent developments pertaining to the problem, and described the proposed emergency state regrlations designed to meet federal statutory requirements. Under these regulations the need standards would be adjusted, and the maximum participating base provided in California Welfare and Institutions Code, 11450(a) would be increased 21.4 percent to comply with section 402(a)(23) of the Act, and grants would be ratably reduced to reflect a payment level of seventy-four percent of total allowable need, with provision for further downward adjustments, in order to comply with state fiscal and budgetary realities. Defendant stated in this document that the emergency regulations would be adopted on or before November 10, 1970, to be effective as of October 1, 1970.
 
 
 8
 The further hearing was held on October 29, 1970, as scheduled. As a result, the order of September 11, 1970, was amended on November 17, 1970 as set out in the margin.[4]
 
 
 9
 In the order of November 17, 1970, the district court included a recital, consonant with the interlocutory appeal statute (28 U.S.C. 1292(b)), that paragraph 5 of the November 17, 1970 order (see note 4, supra), involves a controlling question of law concerning which there is a substantial ground for differences of opinion and that an immediate appeal from the judgment may materially advance the ultimate termination of the litigation. The district court refused defendant's request for a stay.
 
 
 10
 Defendant immediately applied to this court for permission to appeal from the amended partial summary judgment, and for a stay of that judgment pending disposition of such appeal. Another panel of this court granted both motions and set up an expedited briefing schedule. Thus, to date no increased payments, pursuant to a district court order, have been made. Nor have any increased payments been made pursuant to the emergency regulations above mentioned. Their effect was stayed in state court proceedings, pending decision in California Welfare Rights Organization v. Carleson, and, in the interim, the regulations expired by their own terms.
 
 
 11
 The appeal from the November 17 order is the appeal that is now before us. However, we take judicial notice of a number of developments since the taking of this appeal, called to our attention by the parties, since such circumstances may affect our consideration of the various issues presented. In chronological order, these developments are as follows:
 
 
 12
 1. On November 24, 1970, defendant filed an affidavit and supporting documents said to demonstrate compliance with the order of November 17, 1970, and asked the court to enter a final declaratory judgment to that effect.[5]
 
 
 13
 2. On December 18, 1970, the district court amended its order of November 17, 1970, to enlarge the sixtyday period for compliance to March 1, 1971, and to set for hearing, on March 12, 1971, the question of the validity of defendant's regulations under federal law.
 
 
 14
 3. On March 25, 1971, the California Supreme Court decided California Welfare Rights Organization v. Carleson, 4 Cal.3rd 445, 93 Cal.Rptr. 758, 482 P.2d 670 (1971). In this decision the California Supreme Court held that defendant Carleson has the authority to promulgate a regulation increasing the dollar maximums 21.4 percent. That court further held, however, that defendant had no authority to determine the level of benefits to be paid by adopting a regulation incorporating a percentage reduction in the standard of need, retroactive or otherwise, without state legislative approval, and, absent the approval of other states officials, defendant had no authority to exceed his budget in incurring the increased cost of maintaining the dollar maximum system.
 
 
 15
 4. On April 6, 1971, plaintiffs moved in this court for an order vacating the stay and dismissing the appeal, in view of the California Supreme Court decision and other developments.
 
 
 16
 5. On April 16, 1971, the Administrator of the U.S. Department of Health, Education and Welfare (HEW) issued his decision holding that California had failed to adjust its maximums on assistance payments to AFDC recipients to satisfy the requirements of section 402(a)(23) of the Act, 42 U.S.C. 602(a) (23). As a sanction for such nonconformity, the Administrator ordered that, effective July 1, 1971, all federal financial assistance for the California AFDC program be withheld until such time as the California AFDC plan conforms to the requirements of section 402(a)(23) of the Act.
 
 
 17
 6. On April 19, 1971, the district court entered a memorandum and order reciting that, in certifying the question of immediate increases to this court for interlocutory appeal, it had no intention of certifying the question of that court's power to enjoin the receipt of federal funds. However, the court pointed out, the certification read 'an immediate appeal from the judgment may materially advance the ultimate termination of the litigation,' and the stay issued by this court accordingly stayed enforcement of the entire partial summary judgment of November 17, 1970. For this reason, the district court determined that it was bound by the scope of the stay order and could not proceed to enforce the decretal provision restraining receipt of federal funds.
 
 
 18
 7. On April 20, 1971, plaintiffs requested this court to modify ex parte, the stay order, so as to stay only paragraph 5 of the district court order, rather than the entire order.[6]
 
 
 19
 On this appeal, defendant first questions the jurisdiction of the single-judge district court, contending that the matters decided in the order of November 17, 1970, should have been submitted to the three-judge court which had been convened pursuant to 28 U.S.C. 2284. In so arguing, defendant relied primarily upon our decision of January 11, 1971, in Mengelkoch v. Industrial Welfare Commission, 442 F.2d 1119. However, the portion of the Mengelkoch opinion relied upon by defendant has since been modified on petition for rehearing, and now contains nothing bearing upon the jurisdictional question.
 
 
 20
 Plaintiffs' Fourteenth Amendment claims were authorized by 42 U.S.C. 1983 and 28 U.S.C. 1343, and the relief sought thereunder is such that it was necessary, under 28 U.S.C. 2281, to convene a three-judge district court. The claims based on section 402(a)(23) of the Act which are dealt with in the appeal now before us were derived from a nucleus of operative fact common to the Fourteenth Amendment claims. Therefore the district court had pendent jurisdiction to entertain the statutory claims. See United Mine Workers of America v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).
 
 
 21
 Where, as here, the three-judge court has not acted on any feature of the case, and the parties stipulated that the pendent non-constitutional claims may be determined by the single-judge district court, we think it is permissible for the single-judge district court to decide the non-constitutional claims although the members of the three-judge court have been designated. See Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715, n. 3, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962). See also Rosado v. Wyman,397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970) where the jurisdiction of the single-judge district court was upheld after the three-judge court ordered a remand of the non-constitutional claims to the single-judge district court for such proceedings as were appropriate. We believe such a three-judge court remand order is not required where, as here, the three judges have not yet functioned as a court, and the parties stipulate to such procedure.
 
 
 22
 Therefore we reach the merits of this appeal. As disclosed above, on September 11, 1970, the district court declared that the defendant had failed to comply with his duty under section 402(a)(23) of the Act to adjust need determination and dollar maximums. A similar declaration was contained on the November 17, 1970 amendment. The defendant does not here challenge that declaration.
 
 
 23
 The thrust of the defendant's arguments is that the district court exceeded its jurisdiction in this matter by ordering the defendant to make AFDC payments on the basis of increased maximums pending a determination of whether defendant's proposals complied with the requirements of section 402(a)(23) of the Act. But if we assume that the district court had that authority, the question still remains whether it was properly exercised under the circumstances of this case. In addressing this issue, we are cognizant of the difficult questions that had to be resolved by the district court. Unlike the district court, we have the benefit of events that have occurred since November, 1970.
 
 
 24
 We begin with the observation that this action involves an act of Congress that deals with the expenditure of federal funds to promote the general welfare. In such matters, it is the will of Congress, not htat of the courts or the states, that guides the resolution of controversy. See Helvering v. Davis, 301 U.S. 619, 640, 645, 57 S.Ct. 904, 81 L.Ed. 1307 (1937).
 
 
 25
 In Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970) the will of Congress regarding section 402(a)(23) of the Act was defined as follows:
 
 
 26
 1. In requiring states to adjust their determination of minimum need to reflect changes in the cost of living, Congress intended to accomplish two major objectives. First, increasing the standard of need serves to place those additional individuals whose income falls short of that need among those eligible for assistance. Second, while states are free to set the level of benefits to be paid, the extent to which assistance falls short of need, as determined in light of economic realities, is made public and the states are thereby required to shoulder the political consequences that result.
 
 
 27
 2(a). The requirement that states maintaining a dollar maximum system raise their maximums proportionately has a quite different, and perhaps more subtle effect. States are free to determine the level of benefits to be paid under a percentage reduction system, and states are free to change from a dollar maximum system to a percentage reduction system. For example, California could, in complying with section 402(a)(23), institute a percentage reduction system that could result in a level of payments below that which plaintiffs now receive.
 
 
 28
 2(b). But if a state intends to continue under its dollar maximum system, it must raise the maximums. Thus, a state under a dollar maximum system is not entirely free to set the level of benefits to be paid. And, of course, if a state continues under a dollar maximum system, it must bear its share of the increased cost. This cost is an incentive, supplied by Congress 'to abandon a flat 'maximum' system, thereby encouraging those States desirous of containing their welfare budget to shift to a percentage reduction system. * * *' Rosado at 413-414, 90 S.Ct. at 1218. Thus Congress has, if only by implication, required the states to decide whether to pay this increase, or to switch to a percentage reduction system.
 
 
 29
 Here we are dealing only with the question of increased dollar maximums. We do not consider whether the will of Congress, regarding the requirement of adjusted need determination, is presently being frustrated or effectuated under California's state plan.
 
 
 30
 The defendant's position below was that an increase of 21.4 percent in the dollar maximums would bring the state into compliance, and the district court ordered that very increase. This proposal was submitted by the defendant in response to the September 11, 1970, order enjoining him to increase the dollar maximums. It has not yet been determined that 21.4 percent is all that is required. But clearly, such an increase brings the state closer to compliance than had no increase been ordered.
 
 
 31
 It can therefore be said that if the will of Congress is that federal funds be expended in consonance with statutory requirements, the order of the district court tended to effectuate that will. Moreover, bearing in mind the interests of the plaintiffs and the members of the class they represent, such a remedy would be preferable to a judgment ordering the cessation of the flow of federal funds until the state plan complied with federal law.
 
 
 32
 But we must not lose sight of the intent of Congress in prescribing the statutory requirements. That intent includes the requirement that states choose either to pay upon the basis of increased maximums and bear whatever cost increase ensues, or to shift to a percentage reduction system.
 
 
 33
 The relationship of a federal court to other government institutions, and historical concepts regarding the powers of equity courts in general, do limit remedies available in this case. While the authority of the Director of the Department of Social Welfare of the State of California may have been uncertain in November, 1970, it is clear now that the defendant does not have the authority, under present state law, to choose between increased payments or switching to a percentage reduction system. Therefore, it is incorrect to assume that the defendant, by implication, has made the choice Congress intended to be made.
 
 
 34
 The district court's order of September 11, 1970, as amended on November 17, 1970, in effect required the defendant to pay on the basis of increased maximums immediately upon a judicial finding that the state plan did not comply with the requirements of section 402(a)(23) of the Act. We believe a more deliberate approach should have been taken.
 
 
 35
 The practical effects of the order are apparent. The most notable is the resultant strain on the state welfare budget. This could prejudice members of the class plaintiffs represent should the increased cost exhaust the budget the defendant administers. It is not clear that this feature was explored thoroughly in the district court.
 
 
 36
 Also, the order to raise the maximums immediately in effect precluded an opportunity to respond to the inducements Congress provided in section 402(a) (23) of the Act to choose between continuing the present maximum grant system or switching to a percentage reduction system. In November, and before, it was not clear that the defendant could, and now it is clear that the defendant, alone, cannot under present state law, make the decision implied by section 402(a)(23) of the Act. The court, in effectuating the will of Congress, could have, but did not, tailor relief so as to prompt state authorities to make such a choice, which, under the circumstances, could reasonably be expected to be made with some dispatch.
 
 
 37
 As plaintiffs correctly observe, since January, 1968, when section 402(a)(23) of the Act was approved, the defendant, and others, have been on notice that a choice must be made between increased payments under a dollar maximum system or shifting to a percentage reduction system. Plaintiffs argue that, by failing to provide for percentage reduction, the state has, in effect, chosen dollar maximums, and should be required to bear the cost that Congress has prescribed.
 
 
 38
 While this argument may have a certain appeal, we think that when plaintiffs come to court to obtain the rights and benefits to which they are entitled under the law, all relevant considerations should be explored within the confines of the judicial proceeding. In view of the possible consequences of the order, we think defendant should not have been ordered to increase payments immediately. Rather, defendant should have been accorded a reasonable opportunity to use whatever resources are at his disposal to formulate and present a plan for compliance before being ordered to make payment increases. We are not convinced that the course of events would have been unaltered had defendant not been ordered to increase payments immediately.
 
 
 39
 However, events that precede an action cannot be ignored. The interval between approval of section 402(a)(23) of the Act and the present, and the fact that the responsibilities under federal law are relatively clear, are factors that affect the length of time the defendant should be accorded to formulate a plan. While this appeal and accompanying stay has had the effect of precluding further proceedings below, it has not served to preclude the defendant from devising a plan for compliance. Federal monies have been expended in contravention of federal requirements during this time.
 
 
 40
 Proceedings before the Department of Health, Education and Welfare have been brought to our attention, as above mentioned. In the April 16, 1971, decision of the Administrator of the Social and Rehabilitation Service of HEW, the Administrator related that july 1, 1971, was the date of the next federal grant award.
 
 
 41
 July 1, 1971, being the date of the next federal grant award, that portion of the judgment ordering the defendant to make payments as of October 1, 1970, on the basis of increased maximums, is reversed and the cause is remanded with instructions to give defendant an opportunity to present a program which fully complies with federal requirements and which can be implemented without unreasonable delay; in the event that defendant fails to do so by July 1, 1971, the district court may award such equitable relief as is appropriate. However, nothing stated herein is intended to preclude the district court from adjudicating the validity of defendant's proposals prior to July 1, 1971.
 
 
 42
 The motion of plaintiffs for an order vacating the stay and dismissing the appeal is denied. The motion for an order ex parte modifying the stay order is denied as moot.
 
 
 43
 Reversed and remanded for further proceedings consistent with this opinion.
 
 CHAMBERS, Circuit Judge (concurring):
 
 44
 I concur in the result of the foregoing because I assume California can still fold its hands under the decree and let the federal grants be terminated. If that is not permissible, then I dissent.
 
 
 45
 In my view, the opinion simply tells the state what it must do if it is going to take the federal money.
 
 
 46
 I would place the decision primarily on state law as now interpreted by California Welfare Rights Organization v. Carleson, 93 Cal.Rptr. 758, 482 P.2d 670, and upon Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442, plus the currently accepted proposition that we may intrude in such things as this.
 
 
 
 *
 The Honorable Alfred T. Goodwin, United States District Judge for the District of Oregon, Sitting by designation
 
 
 [1]
 These adjustments, both with respect to the calculation of minimum needs of individuals and to the dollar maximums payable, are necessary if a state is to have a satisfactory state plan. Section 402(a) of the Act, 42 U.S.C. 602(a). In turn, a satisfactory state plan is a prerequisite to receipt of matching federal funds. Section 401 of the Act, 42 U.S.C. 601
 For a brief description of the AFDC program, see King v. Smith, 392 U.S. 309, 313, 316-319, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); Rosado v. Wyman, 397 U.S. 397, 407-415, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); and Dandridge v. Williams, 397 U.S. 471, 473-483, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). For a description of California's State Plan concerning the matters here in issue, see California Welfare Rights Organization v. Carleson, 4 Cal.3d 445, 93 Cal.Rptr. 758, 482 P.2d 670 (1971).
 
 
 [2]
 Section 11450(a) sets forth a schedule of the maximum dollar amounts payable to families with dependent children. The schedule is graduated according to the number of needy children in the family
 
 
 [3]
 The court declared:
 (a) Since July 1, 1969, defendant was under a duty enjoined upon him by section 402(a)(23) of the Act to adjust the amounts used by California to determine the needs of individuals to reflect fully changes in living costs since such amounts were last established and to adjust the maximums which California imposes on the aid paid to families.
 (b) Defendant failed to comply with this federal law in that (1) maximums were not and to this date have not been increased as required effective July 1, 1969, and (2) need standards were not and have not been reised as required effective July 1, 1969.
 (c) As a result of these violations of federal law, plaintiffs are being deprived of benefits to which they are legally entitled.
 (d) Welfare and Institutions Code, 11450(a) and implementing State Department of Social Welfare regulations, insofar as they set maximum ceilings on the amount of aid payable to AFDC families, are inconsistent with and not in conformity with the requirements of 402(a)(23) of the Act, 42 U.S.C. 602(a) (23), and have not been in conformity therewith since July 1, 1969, and are therefore invalid.
 In paragraph 3 of its September 11, 1970 order, the district court enjoined defendant from enforcing Welfare and Institutions Code, 11450(a), and implementing State Department of Social Welfare regulations, insofar as they limit the amount of aid payable to AFDC families in California.
 In paragraph 4, the court ordered defendant to prospectively increase need standards and dollar maximums and to readjust grants of plaintiffs and their class accordingly.
 In paragraph 5, California was enjoined from receipt of federal funds if compliance with the Act had not been accomplished within sixty days from the date of the judgment, and the court reserved the question of whether federal funds should be returned if the defendant did not comply with the judgment.
 In paragraph 6, the court ordered the defendant, pending compliance with the Act, to increase dollar maximums to reflect the increase in the cost of living since the maximums were established in 1957.
 
 
 [4]
 The court enjoined the enforcement of Welfare and Institutions Code, 11450 (a) and implimenting regulations as it had done in paragraph 3 of the September 11, 1970, judgement, after having declared the state to be out of compliance with the Act
 Paragraph 5 of the September 11, 1970, judgment, enjoining further receipt of federal funds, was amended to make the cut-off of federal funds effective sixty days from the date of the amended judgment in the event the state had not complied with section 402(a)(23) of the Act.
 As noted above, paragraph 6 of the September 11, 1970, judgment ordered an increase in the dollar maximums to reflect the cost of living increase since 1957, this being thought to be the most recent date the maximums were established. In its document entitled 'Compliance with Partial Summary Judgment of September 11, 1970' the defendant urged that the maximums were last established in 1962, and that the cost of living had increased 21.4 percent in the interim. As noted, the defendant's regulations, which allegedly would bring the state into compliance, would be effective as of October 1, 1970. Without prejudice to the plaintiffs' right to prove the 1962 date incorrect, paragraphs 4 and 6 of the September 11, 1970, judgment were effectively amended in paragraph 5 of the November 17 order, to provide interim relief to plaintiffs, as follows:
 'Pending further order of this Court, Defendant * * * and his successors * * * shall immediately increase the dollar maximums by 21.4 percent and readjust AFDC grants by said amount retroactive to October 1, 1970. Said increases in dollar maximums and grants shall not be reduced or otherwise affected by a retroactive ratable reduction of the standard of need, and Defendant * * * is hereby enjoined pending further order of the Court from adopting and enforcing regulations which reduce or otherwise affect said increases in dollar maximums and grants by a ratable reduction applied retroactively from the date of promulgation. * * * By this Amended Partial Summary Judgment the Court does not purport to pass upon Defendant's * * * authority to affect future grants by a prospective ratable reduction of the standard of need.'
 The defendant argues that the district court ordered the defendant to make retroactive payment increases when it required the adjustment of AFDC grant maximums be retroactive to October 1, 1970. The defendant further argues that the district court is without authority to order retroactive payments. As we view the November 17, 1970 judgment, it merely amended the amount of the increase ordered by the September 11, 1970, judgment, to reflect the amount of the increase the defendant admitted was necessary. Thus we do not believe the court ordered retroactive payments. Moreover, the effective date of the court-ordered increases was consonant with that proposed by the defendant. The payment increases, as we view them, were intended merely as interim relief pending determination of whether the defendant had so adjusted both the need determination and the dollar maximums to comply with 402(a)(23) of the Act.
 
 
 [5]
 As provided in 28 U.S.C. 1292(b), interlocutory appeals thereunder do not operate to stay further district court proceedings unless the district judge or the court of appeals or a judge thereof shall so order. No such order has been entered in this case
 
 
 [6]
 It was reported in the press on May 1, 1971, that the state had agreed on the previous day to grant cost-of-living increases to AFDC recipients, effective June 1, 1971, while at the same time decreasing the number of such recipients by 27,500. It was also reported in the press, on May 14, 1971, that HEW had advised California that it would drop its July 1, 1971 cut-off deadline on federal matching funds, in view of the advice received from California that a 21.4 percent increase in ceilings on AFDC grants would become effective June 1, 1971. Since the parties have not formally called these matters to our attention, we do not take judicial notice of these possible developments