465 F.2d 111
 Dorothy BRYANT, individually and on behalf of her four minor
children, et al., Plaintiffs-Appellants,
v.
Robert B. CARLESON, as Director of the Department of Social
Welfare of the State of California, Defendant-Appellee.
 No. 72-1458.
 United States Court of Appeals,
 Ninth Circuit.
 July 24, 1972.
Rehearing Denied Aug. 28, 1972.
 
 Edmund S. Schaffer (argued), Ralph Santiago Abascal, Jay Allen Eisen, San Francisco, Cal., for plaintiffs-appellants.
 Elizabeth Palmer, Deputy Atty. Gen. (argued), David Browie, Deputy Atty. Gen., Evelle J. Younger, Atty. Gen., San Francisco, Cal., for defendant-appellee.
 Before CHAMBERS, HAMLEY and GOODWIN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Four recipients of public assistance under the Aid to Families with Dependent Children (AFDC) program in California brought this class action against the Director of the Department of Social Welfare, State of California, to obtain declaratory, injunctive and monetary relief with regard to the assertedly unlawful manner in which that program is being administered.
 
 
 2
 In their first two claims, plaintiffs alleged that the state is out of compliance with section 402(a) (23) of the Social Security Act (Act), 42 U.S.C. Sec. 602(a) (23), added by section 213(b) of the Social Security Amendments of 1967, 81 Stat. 821, 898, pertaining to AFDC benefits. In their remaining three claims, plaintiffs alleged that defendant was proceeding in a way that deprived them of equal protection and due process, as guaranteed by the Fourteenth Amendment.
 
 
 3
 On September 11, 1970, the district court entered a partial summary judgment favorable to plaintiff welfare recipients as to the first and second claims. The district court amended this judgment on November 17, 1970.[1] Defendant took an interlocutory appeal to this court pursuant to 28 U.S.C. Sec. 1292(b). We reversed in part and remanded the cause to the district court for further proceedings. Bryant v. Carleson, 444 F.2d 353 (9th Cir. 1971).
 
 
 4
 On April 29, 1971, defendant director promulgated EAS Sec. 44-313 (a state welfare regulation), amending the state welfare plan by increasing dollar maximums to be paid AFDC recipients by 21.4%, effective June 1, 1971. This date is to be compared to the July 1, 1969 date such an adjustment should have been made, as provided in section 402(a) (23) of the Act. The 21.4% increase was premised on the view that the amounts used by the state to determine the needs of individuals had been last "established" as that term is used in section 402(a) (23), on January 1, 1962, pursuant to SB 568, Cal.Stats.1961, ch. 1396, now Welfare and Institutions Code, Sec. 11450(a).
 
 
 5
 By letter dated June 21, 1971, the Administrator of the Social and Rehabilitation Service of the United States Department of Health, Education and Welfare (HEW), advised all interested parties that the amendment of the state plan, accomplished by the promulgation of EAS Sec. 44-313 "meets Federal requirements. . . ." In this letter the Administrator declined to condition approval of the state plan on its award of retroactive benefits to welfare recipients. The Administrator also expressly stated that the 21.4% increase provided in EAS Sec. 44-313 is acceptable because:
 
 
 6
 ". . . this amount represents the weighted average increase in the Consumer Price Index for the San Francisco and Los Angeles areas for the period from January 1962 to July 1969. The maximums were last established on January 1, 1962. . . ."
 
 
 7
 On the basis of EAS Sec. 44-313, and the Administrator's letter of June 21, 1971, approving the California welfare plan as so amended, defendant, on June 29, 1971, moved in the district court to dismiss this action as moot. Plaintiffs countered with a motion to modify the amended partial summary judgment in two particulars.
 
 
 8
 One of the amendments sought by plaintiffs was the inclusion of a judicial declaration that the 21.4% increase in dollar maximums authorized by EAS Sec. 44-313 is erroneous, and that for families with from two to nine children, the increase should be 46.7% because it should cover increases since October, 1951 (assertedly the last date such needs were "established"), and for families with one child, or more than nine, the increase should be 32.8% because it should cover the increases since October, 1957 (assertedly the last date such needs were "established").
 
 
 9
 The second amendment of the November 17, 1970 judgment sought by plaintiffs was inclusion of a decretal provision requiring the state to make payments to welfare recipients at the higher rate, retroactive to July 1, 1969, instead of October 1, 1970, as provided in the November 17, 1970 judgment, or any later date. On July 31, 1971, the United States Attorney filed an amicus curiae brief in the district court on behalf of HEW reiterating that agency's position, as stated in its letter of June 21, 1971, referred to above, that the state was then in full compliance with federal requirements.
 
 
 10
 After a hearing, the district court entered an order on August 10, 1971, determining that the State of California is in full compliance with section 402(a) (23) of the Act, and that the prior partial summary judgment, as amended, "has been satisfied." This order also denied plaintiffs' request that defendant be required to make payments in accordance with section 402(a) (23) retroactive to July 1, 1969. This order was made final on January 7, 1972, when the district court granted plaintiffs' request to dismiss, without prejudice, plaintiffs' third, fourth and fifth claims, and entered a final judgment consistent with the August 10, 1971 order. Plaintiffs then took this appeal.
 
 
 11
 In this court, plaintiffs advance the same arguments they relied upon in the remanded district court proceedings, namely:
 
 
 12
 I. The district court erred in finding that 1962 was the most recent date that aid maximums were established because it erroneously construed section 402(a) (23) of the Act.
 
 
 13
 II. Appellant recipients are entitled to receive all public assistance benefits wrongfully withheld as the result of the illegal failure to adjust aid maximums proportionately on July 1, 1969.
 
 
 14
 We reject these arguments for the reasons stated orally by the district court at the close of argument on July 29, 1971, as follows:
 
 
 15
 "The State of California has presented a program which it asserts fully complies with the requirements of Paragraph 23 of Section 402(a) of the Social Security Act, 42 USC Section 602(a).
 
 
 16
 "HEW finds that California is in compliance. This Court agrees.
 
 
 17
 "In so doing, the Court finds that January 1, 1962, was the last date maximums were established for purposes of the amendment to the Social Security Act, that is to say, Section 402(a) (23) which was approved in January, 1968; and of course many years subsequent to the time the State of California had taken its last action. And therefore the action was not taken with any thought in mind or knowledge that such a provision of law would be enacted at some subsequent date.
 
 
 18
 "The percentage of living cost increase since January 1, 1962, was determined by the State to be 21.4 percent, a figure which HEW also found to be correct. Plaintiffs' claim that the percentage increase figure should be 22.2 is based upon a difference of methodology employed. We find the methodology employed by defendant and approved by HEW to be reasonable and therefore entitled to deference by this Court.
 
 
 19
 "Plaintiffs continue to assert that defendant should be required to make payments in accordance with said Section 402(a) (23) retroactive to July 1, 1969, the effective date of that section. While there is no question that the State continued to receive Federal funds from July 1, 1969, until June 1, 1971, in flagrant violation and disregard of Federal law, the rulings of the Supreme Court in Rosado versus Wyman, 397 U.S. 397 [90 S.Ct. 1207, 25 L.Ed.2d 442] (1970), followed by Judge Weinstein in the same case on remand from the Supreme Court, and the action taken by the Court of Appeals in the instant case, cast serious doubt on the jurisdiction and power of this Court to order retroactive payments.
 
 
 20
 "Assuming, nevertheless, that this Court has such power, it must act as a court of equity and is therefore required to balance the State's prior unlawful action with the desperate fiscal and budgetary realities faced by the State in the administration of its welfare program and set forth in the affidavit of Charles Hobbs, Chief Deputy Director of the State Department of Social Welfare.
 
 
 21
 "It must also take into consideration the interests of welfare recipients who have been denied monies to which they are entitled.
 
 
 22
 "Finally, it must consider the effect of retroactive payment on present and future welfare recipients. Retroactive payment would cost the State something in the area of an additional $90 million.
 
 
 23
 "While the Court recognizes the plight of welfare recipients, including the gross disparity between their actual needs and the amounts paid to them, it cannot in good conscience conclude that their interests are best served by ordering this expenditure.
 
 
 24
 "The fiscal crisis this would cause in the State of California would likely result in welfare cutbacks beyond the imagination of the parties here or the Court.
 
 
 25
 "While the State has no one to blame but itself for being thrust on the brink of bankruptcy in the administration of its welfare program, this Court will not push it over the edge."
 
 
 26
 Affirmed.
 
 
 
 [1]
 There were subsequent amendments of this judgment on December 18, 1970 and February 26, 1971, but these amendments are not here relevant