**BBS PRODUCTIONS, INC., and Columbia Pictures Industries, Inc., Plaintiffs,**

**v.**

**Joseph PURCELL, Individually and as City Attorney for Phoenix, Arizona, et al., Defendants.**

**No. 72–512.**

United States District Court, D. Arizona.

June 28, 1973.

Ramsey Clark, Washington, D. C., John P. Frank, Phoenix, Ariz., for plaintiffs.

Alan S. Max, Asst. City Atty., Phoenix, Ariz., Douglas G. Zimmerman, Deputy, Maricopa County Atty., for defendants.

* Honorable John F. Kilkenny, Senior United States Circuit Judge for the Ninth Circuit, William G. East, Senior United States District Judge for the District of Oregon, and William C. Frey, United States District Judge for the District of

Before KILKENNY, Circuit Judge, and EAST and FREY, District Judges *.

## OPINION

EAST, District Judge:

### STATEMENT OF CASE

*Parties:*

It appears from the complaint herein and the written stipulation of facts filed by the parties that:

The plaintiff BBS Productions, Inc. (BBS) is engaged in the production of motion pictures and particularly the film entitled, "The Last Picture Show" (Film), and the plaintiff Columbia Pictures Industries, Inc. (Columbia) is engaged in the production, financing and distribution of motion pictures. By mutual agreement Columbia has acquired the distribution rights to the Film for exhibition with BBS retaining a percentage or share of the revenue generated by distribution and exhibition of the film, and

The defendant Joseph Purcell (Purcell) is the City Attorney for the City of Phoenix, Arizona, and in that capacity is authorized to enforce the provisions of Arizona Revised Statutes, Section 13-537, within that city. The defendant James Carter (Carter) is the City Prosecutor for that city and is likewise authorized to enforce the statute within the city. The defendant Moise Berger (Berger) is the County Prosecutor for Maricopa County and is authorized to enforce the statute within that county wherein the city is located.

*Statute:*

Arizona Revised Statute, Section 13-537, so far as is pertinent to our inquiry, provides as follows:

"A. It is unlawful for any person knowingly to place explicit sexual material upon public display, or knowing-

Arizona, constituting a statutory three-judge District Court by designation of the Honorable Richard H. Chambers, Chief Judge for the United States Circuit Court of Appeals for the Ninth Circuit, dated November 6, 1972.

ly to fail to take prompt action to remove such a display from property . . under his control after learning of its existence."

"B. penalty . . "misdemeanor."

"C. For the purposes of this section:

1. 'Explicit sexual material' means any pictorial . . material depicting human sexual intercourse, masturbation, bestiality, oral intercourse, anal intercourse, direct physical stimulation of unclothed genitals, flagellation or torture in the context of a sexual relationship or human genitalia.[1] Works of art or of anthropological significance are not included. . .

2. 'Public display' means the placing of material on or in a . . viewing screen . . so that the material . . is easily visible from a public thoroughfore . . the property of others. . ."

*Relief sought:*

BBS and Columbia seek injunctive relief from alleged infringement under Section 13–537 of the freedom of speech and press provisions of the First and Fourteenth Amendments to the United States Constitution under 28 U.S.C. §§ 1331, 1332(a) and 2281 et seq., declaratory relief pursuant to 28 U.S.C. § 2201 and equitable relief for the deprivation of Civil Rights under 42 U.S.C. Section 1983 and 28 U.S.C. § 1343(3).

*Motions:*

1. Berger, with the remaining defendants joining, has moved to dismiss the complaint herein on the amended grounds:

a) The plaintiffs lack standing to sue.

b) The complaint fails to state a claim upon which relief can be granted against Berger.

c) He claims immunity from damages.

2. BBS and Columbia have moved for summary judgment, pursuant to Rule 56, F.R.Civ.P., declaring Section 13–537 unconstitutional and permanently enjoining the enforcement thereof.

### FACTS

We find from the facts stipulated to and the exhibits filed herein that:

The Northern Drive-In Theater (Northern) within the City of Phoenix, on April 19, 1972, under arrangement with Columbia, began exhibition of the Film and the Film was shown on two scheduled runs that night, and each of the nights of April 20 through 25. Northern is owned and operated by nonparties under the direct management of J. M. Mayfield (Mayfield). The viewing screen at the Northern and pictures thereon are visible from public thoroughfares and property of others;

Columbia and BBS, through Columbia, each held entitlements in and to revenues generated by such exhibition and a continuation thereof;

On April 24, 1972, Carter wrote Mayfield these pertinent words:

"The Phoenix Police Department has received several complaints from citizens concerning the [film] presently being shown at . ." the Northern.

"While being shown at your drive-in theater, these films [sic] are easily seen by neighboring residents and travelers upon the public way.

"Also enclosed is a copy of a statute passed subsequent to March, 1971 [Section 13–537, supra].

"Based upon all the reports [from complaining citizens, a police officer and an assistant prosecutor] that we have received, it is my opinion that this film does in fact violate not only the explicit terms of the ordinance[2] and statute, but their spirit as well.

"My purpose in writing this letter is to again urge your cooperation in this matter and to request that you cease

---

1. It is of interest to note that all of the proscribed acts, except the depiction of "human genitalia" are explicit sexual activities or relationships.

2. The claim of violation of the ordinance is not before us. The parties concede that the state statute preempts the field.

exhibiting this film following your normal business day of Tuesday, April 25, 1972."

The contents of that letter were made known to Sy Thompson (Thompson), a superior of Mayfield. Thompson telephoned a request for permission to continue the exhibition until a replacement could be obtained. Carter refused and stated "that exhibition of the Film beyond April 25 would result in prosecution under the statute. . ." Carter's statement resulted in a cessation of the exhibition of the Film following the second run on April 25;

On May 18, 1972, a meeting was held in Purcell's office, attending with him were Carter and other officials of the city and officials of Northern's operators, concerning the continued exhibition of the Film;

At the meeting Purcell stated "that if a portion of . . [the Film] . . in which there is an approximately four-second segment of total frontal nudity of a female swimmer . . was deleted, Northern could continue to exhibit [the Film] without violating the statute. . ." Further, "that exhibition of any movie at Northern containing a scene of total nudity would violate Section 13–537 . . and the exhibitor would be liable for prosecution thereunder."; and

Fearing prosecution for exhibition of the Film, unless altered in accordance with the Purcell demand, the operators have continued to refrain from exhibiting the Film at Northern.

Following argument and submission, we requested counsel for the parties to supply the record with four still pictures of the charged segment of film frames, evenly spaced over the four second "total frontal nudity of a female swimmer."

During preparation of the requested still picture, counsel submitted to the court a tendered stipulation of fact that "the term 'genitalia' in the statute reaches total front male and female nudity." Common knowledge tells us that is so in the case of a male, and common

sense tells us that is not necessarily so in the case of the female. We decline to accept the tendered stipulation of fact as an anatomical true fact.

The record has now been supplied and supplemented with the requested four still pictures. We narrate these still pictures as follows:

The first is a portrayal of five young persons skinny dipping in an indoor pool. Three of the swimmers are shown shoulder deep in the pool. A young man is shown frontally in the forefront standing on the edge of the pool and bare above the waist. The fifth swimmer, a young woman, is shown full front in the complete nude, standing knee deep in the water. The remaining three pictures in series reveal the pool swimmers and the young man in the same relative positions and the nude young woman walking forward and climbing the pool steps until she steps on the edge of the pool to the right and the rear of the young man. In short, the challenged segment of film shows a "total frontal nudity of a female swimmer" walking forward and climbing the steps, completely straight, legs together, and from knee deep in the pool to the top of the pool's rim, much reminiscent of the early twenty century household picture entitled "September Morn." We find as an anatomical fact that such a portrayal is not a display of exterior female genitalia. No standard or medical dictionary tells or shows us that the Mount of Venus, revealed by the triangular area of pubic hair, is any component of exterior female genitalia. See Dorland's Illustrated Medical Dictionary, 23rd Edition, for a view of exterior female genitalia and the names of the components.

DISCUSSION AND CONCLUSIONS

*Motion to Dismiss:*

 1. We find that the clear and unequivocal threats, on the part of Purcell and Carter, of prosecution against the operators of the Northern directly caused the cessation of the exhibition of the Film. This was tantamount to an

official suppression of BBS and Columbia's Film resulting in injury with no opportunity to obtain a judicial test of the constitutional issues. BBS and Columbia, each, have clear standing to prosecute these proceedings. Corsican Productions v. Pitchess, 9 Cir., 338 F.2d 441 (1964); Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 64, n. 6, 83 S.Ct. 631, 9 L.Ed.2d 584 (1962).

2. Interwoven in the second asserted grounds for dismissal is the questioning of this court's exercise of jurisdiction under the allegations of the complaint in that Berger argues a form of the doctrine of abstention. These grounds are without merit. Monroe v. Pape, 365 U.S. 167, 183, 81 S.Ct. 473, 5 L.Ed.2d 492, and *Corsican,* supra.

■ Berger was not a party to the threats of prosecution causing the exhibition of the Film to terminate. He in his official capacity is passive to the litigation and is not an indispensable party; however, his office and its successors are duty bound to enforce the statutes of this nature within his county and stand in the position of prosecutor if the Film was to be exhibited tomorrow. Therefore, he is a proper party to be joined pursuant to Rule 20 of the Federal Rules of Civil Procedure. 3A Moore's Federal Practice, Section 2006, and authorities herein cited.

■ 3. The issue of immunity is irrelevant to the constitutional issues, and we decline to express any view thereon in this Section 2281 et seq. phase of the cause.

We conclude the motion should be denied.

*Merits:*

We deem it to be appropriate and expedient to deal with BBS and Columbia's cause in two separate phases: (a) the constitutional phase or issue and (b) the declaratory judgment and civil rights phase or issues.

We deal first with the constitutional issue under Section 2281 et seq.

It is pertinent for us to recite that the Film is a feature length motion picture, rated "R" (Restricted), depicting generally the change of the life styles of the teen-aged during the early 1950's. The defendants concede that the dominant theme of the Film is not obscene, and the Purcell and Carter interference with its exhibition was not based on claimed obscenity. Accordingly, in this Section 2281 et seq. phase of the cause we are to deal only with the query whether the display of the charged four-second segment of film is violative of Section 13–537, and if so, whether Section 13–537 on its face, or as applied under the facts, is an infringement upon BBS's and Columbia's rights of free speech and press.

■ Based upon the foregoing findings of fact we conclude that the exhibition of the charged four second segment of total frontal nudity of a female swimmer is not violative of Section 13–537 and therefore we are not confronted with any actual or justiciable issue of the constitutionality of the Section on its face. Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970).

*Motion for Summary Judgment:*

Since no constitutional issue is now presented, we conclude BBS and Columbia's motion for summary judgment on the alleged constitutional issue should be denied.

■ Now we deal with the declaratory judgment and civil rights phases or issues. It is noted that this three-judge District Court was convened because the complaint challenged the constitutionality of Section 13–537 and jurisdiction was properly invoked. Accordingly, this court also has jurisdiction to hear and determine the non-constitutional question involved, i. e., declaratory judgment and civil rights issues. Green v. Connally, 330 F.Supp. 1150, at 1170 (D.Cal. 1971); Gilliard v. Craig, 331 F.Supp. 587 at 592 (W.D.N.C.1971), citing among others *Rosado,* supra, and Bryant v. Carleson, 444 F.2d 353 (9th Cir. 1971), cert. denied, 404 U.S. 967, 92 S.Ct. 344, 30 L.Ed.2d 287.

However, we deem it appropriate and expedient to remand the declaratory judgment and civil rights allegations and relief thereunder, if any, phases of this cause to the District Court for consideration and handling, and thereupon to dissolve this three-judge District Court. *Rosado*, supra, 397 U.S. at 403, 90 S.Ct., at 1213 states:

". . the most appropriate course may well have been to remand to the single district judge for findings and the determination of the statutory claim rather than encumber the district court, at a time when district court calendars are overburdened, by consuming the time of three federal judges in a matter that was not required to be determined by a three-judge court." See, also, *Bryant*, supra, 444 F.2d at 358–389.

The foregoing opinion shall constitute this three-judge district court's findings of fact and conclusions of law, pursuant to Rule 52(a), Federal Rules of Civil Procedure.