**Karen MITCHELL and Ann Whitten, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**Donald M. BLINZINGER, et al., Defendants.**

**Civ. No. H 85–403.**

United States District Court, N.D. Indiana, Hammond Division.

Aug. 29, 1986.

Judith M. Haller, Legal Services Program of Greater Gary, Inc., Gary, Ind., for plaintiffs.

Gary L. Shaw, Deputy Atty. Gen., Indianapolis, Ind., for all defendants.

Maria L. Corona, Bd. Atty., Lake County Dept. of Public Welfare, Gary, Ind., for Michael Madalon, John Bowman, Roy Borom, Leonora Goldsmith and Lillibet Espinosa.

Theodore A. Fitzgerald and John P. Shanahan, Petry & Fitzgerald, Hebron, Ind., for Thomas R. St. Myer, Burton Langer, Charles Osburn, Patricia Hinman, Maryann Weltz and Joan Martin.

## ORDER

MOODY, District Judge.

This matter comes before the court on plaintiffs', Karen Mitchell, et al., Motion to Amend Judgment filed on May 16, 1986. The plaintiffs filed their class action complaint on May 1, 1985 and an amended complaint on May 17, 1985. Plaintiffs challenged Indiana's income eligibility standard or "standard of need" as applied to applicants and recipients of the Aid to Families with Dependent Children (AFDC) program and other welfare benefits in Indiana. Plaintiffs argued that Indiana's standard-of-need computation violated Title IV of the Federal Social Security Act and the Fourteenth Amendment to the United States Constitution. On May 5, 1986, this court granted a motion for summary judgment for the defendants on all of plaintiffs' claims.

In their motion to amend, the plaintiffs seek reconsideration of that portion of the May 5, 1986 order which upheld the defendants' use of both rateable reductions in and maximum levels of the benefits paid out to recipients of AFDC in Indiana.

## I.

### A. The AFDC Program

Title IV–A of the Social Security Act ("Act"), as amended, provides grants to states for aid and services to needy families with children. The purpose of the AFDC program is declared in the statute to be

encouraging the care of dependent children in their own homes or in the homes of relatives by enabling each state to furnish financial assistance and rehabilitation and other services, as far as practicable under the conditions in such State, to needy dependent children and the parents or relatives to attain or retain capability for maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection....

42 U.S.C. § 601. As the Supreme Court has recognized, the AFDC program "is based on a scheme of cooperative federalism." *King v. Smith,* 392 U.S. 309, 316, 88 S.Ct. 2128, 2132, 20 L.Ed.2d 1118 (1968). The Federal government provides funds to

match the contribution of a participating state. The state administers the program and is required to submit for federal approval a State plan in conformity with the Federal statute and implementing regulations found in 45 C.F.R. § 201 *et seq.* As the Supreme Court also recognized in explaining the AFDC program in *Shea v. Vialpando,* 416 U.S. 251, 253–54, 94 S.Ct. 1746, 1750, 40 L.Ed.2d 120 (1974), the states "are given broad discretion in determining both the standard of need and the level of benefits." Each state's AFDC plan specifies a statewide standard of need, "which is the amount deemed necessary by the State to maintain a hypothetical family at a subsistence level. Both eligibility for AFDC assistance and the amount of benefits to be granted an individual applicant are based on a comparison of the State's standard of need with the income and resources available to that applicant." *Id.* at 253. The federal regulations implementing the AFDC program provide that a state plan must take into account an AFDC applicant's or recipient's income and resources in a manner consistent with the federal requirements at 45 C.F.R. § 233.-20(a)(3) (1983). *See also* 42 U.S.C. § 602(a)(1).

Three amendments to Title IV have had a direct impact on determination of eligibility. A 1968 amendment required that the standard of need be adjusted by July 1, 1969 to reflect increases in the cost of living. 42 U.S.C. § 602(a)(23). The Omnibus Budget Reconciliation Act of 1981 (OBRA) declared any household whose gross income exceeded 150 percent of the state's standard of need ineligible for AFDC benefits, 42 U.S.C. § 602(a)(18). The Deficit Reduction Act of 1984 (DE-FRA) raised the threshold to 185 percent of the state's standard of need. 42 U.S.C. § 602(a)(18). The dispute at bar arises, in part, on the interpretation of the 1968 amendment.

B. Indiana's Standard of Need

Indiana's standard of need consists of three categories. First, there is the shelter expense, which is the amount paid for rent or purchase of the family's residence, up to a maximum of $100.00 per month. Second, there are basic needs which consist of fixed amounts per person for food, clothing, utilities, and household supplies. Third, and finally, there are special needs, which are fixed amounts for such things as life insurance, school expenses, special diets, household repairs and essential furnishings. A given family's need standard for one month is the total of the amounts for basic needs, special needs and shelter expenses. *See* 470 IAC 10.1–3–3 (April 1, 1984); Defendant's exhibit B.

This total needs figure is then rateably reduced by 10% as required by I.C. 12–1–7–3.1. The rateably reduced amount is compared to the family's net countable income to determine whether a deficit exists, thereby rendering the family eligible for an AFDC payment. The payment is then made in terms of the deficit amount (the difference between the rateably reduced total need figure and net income) but is limited to a maximum grant under state law.[1]

In conformity with the 1968 amendment, Indiana adjusted its standard of need to reflect cost of living increases. Since that one time increase Indiana's standard of

---

1. Indiana Code § 12–1–7–3(b) provides:

The total amount paid to any dependent child, other than for medical expenses, for any calendar month may not exceed ninety-eight dollars ($98); and the total amount paid to the person essential to the well-being of the dependent child, other than for medical expenses, for any calendar month may not exceed ninety-eight dollars ($98). The total amount paid to one (1) dependent child and to the person essential to the well-being of the dependent child, other than for medical expenses, for any calendar month may not exceed one hundred ninety-six dollars ($196). If there is more than one (1) dependent child in the same home, the total amount paid, other than for medical expenses, for any calendar month may not exceed sixty dollars ($60) for each additional child; and if the second parent of the child is incapacitated and is living in the home, an amount not to exceed sixty dollars ($60) may be paid for the benefit to the incapacitated parent.

need has essentially remained the same.[2] Indiana's current AFDC standard of need was approved by the United States Department of Health and Human Services on April 11, 1984.

## II.

Plaintiffs argue that Indiana's use of both a rateable reduction of benefits, I.C. 12–1–7–3.1, and a maximum limit on those benefits, I.C. 12–1–7–3(b), is inconsistent with 42 U.S.C. § 602(a)(23) and its accompanying regulations, 45 C.F.R. § 233.-20(a)(2)(ii) and (3)(viii).

In 1968, Congress amended Title IV of the Federal Social Security Act by requiring states to adjust their individual standards of need to reflect increases in the cost of living. The relevant portion of the amended Act provides:

> [The State plan shall] provide that by July 1, 1969, the amounts used by the State to determine the needs of individuals will have been adjusted to reflect fully changes in living costs since such amounts were established, and any maximums that the State imposes on the amount of aid paid to families will have been proportionately adjusted.

This amendment does not expressly authorize the use of a rateable reduction. The Supreme Court, however, when construing this amendment held that Congress meant to permit states to employ rateable reductions in order to meet their respective fiscal restraints. *Rosado v. Wyman*, 397 U.S. 397, 412–13, 90 S.Ct. 1207, 1217–18, 25 L.Ed.2d 442 (1970). The Court stated:

> We think two broad purposes may be ascribed to [the amendment]: First, to require States to face up realistically to the magnitude of the public assistance requirement and lay bare the extent to which their programs fall short of fulfilling actual need; second, to prod the States to apportion their payments on a more equitable basis. Consistent with this interpretation of [the amendment], a

State may, after recomputing its standard of need, pare down payments to accommodate budgetary realities by reducing the percent of benefits paid or switching to a percent reduction system, but it may not obscure the actual standard of need.

*Id.* This interpretation of 42 U.S.C. § 602(a)(23) clearly authorizes a state's use of maximum benefit levels and a percent reduction system. The issue raised by the plaintiffs in this case is whether these two mechanisms are mutually exclusive; that is, whether a state, like Indiana, may maintain its maximum benefit levels and also employ a system of rateable reductions.

In their motion to amend, the plaintiffs rely heavily upon the "either/or" language used by the Supreme Court in the *Rosado* case. In holding that states could reduce the amount of benefits paid in order to meet budgetary realities, the Court said this could be accomplished by "reducing the percent of benefits paid or switching to a percent reduction system." Plaintiffs lean heavily upon the Court's use of the word "or" in this context. Certainly, the Court's interpretation of a statute carries a great deal of weight, but it should be noted that the Court was not concerned with the specific issue raised in this case when it made the foregoing statement.

In *Rosado*, New York AFDC recipients brought suit to overturn a statute which would substantially reduce their welfare benefits on the grounds that the statute was in conflict with § 602(a)(23) and violated the equal protection clause of the Fourteenth Amendment. In reviewing the history of § 602(a)(23), the Court noted that both the House and Senate versions contained provisions for some annual standard of need adjustment, sought after by the Johnson administration, but were struck in committee. *Id.* at 411–412. Though Congress rejected the annual adjustment provisions, "it embodied in legislation the cost of living exercise which has both practical and

---

**2.** Some minor adjustments to the state's standard of need were made after 1969 affecting the manner in which a household's need level is calculated. *See* defendant's Answers to Plaintiff's Interrogatories, Number 5, filed June 19, 1985.

political consequences." *Id.* at 413. Describing the political consequences of the one-time adjustment, the Court said: "While it leaves the states free to effect downward adjustments in the level of benefits paid, it accomplishes the goal, however modest, of forcing a state to accept the political consequence of such a cutback and bringing to light the true extent to which actual assistance falls short of the minimum acceptable." *Id.*

The *Rosado* Court found the New York plan to be in violation of the 1968 amendment because its new plan excluded allowances for certain items formerly covered by the previous plan. *Id.* at 418. The Court was not deciding whether a state could implement a system of rateable reduction in conjunction with its existing use of maximum benefit levels.

In an effort to discern the Congressional intent, if any, on the simultaneous availability of maximum benefit levels and a system of rateable reduction, the court turns to the federal regulations promulgated under 42 U.S.C. § 602(a)(23). The Office of Family Assistance, of the Department of Health and Human Services, elaborated on 42 U.S.C. § 602(a)(23) in 45 C.F.R. § 233.20(a)(2)(ii) which reads:

In the AFDC plan, provide that by July 1, 1969 the State's standard of assistance for the AFDC program will have been adjusted to reflect fully changes in living costs since such standards were established, and any maximums that the State imposes on the amount of aid paid to families will have been proportionately adjusted. In such adjustment a consolidation of the standard (*i.e.*, combining of items) may not result in a reduction in the content of the standard. *In the event the State is not able to meet need in full under the adjusted standard, the State may make rateable reductions in accordance with paragraph (a)(3)(viii) of this section.* Nevertheless, if a State maintains a system of dollar maximums these maximums must be proportionately adjusted in relation to the updated standards.

(Emphasis added.)

This regulation does not reveal any prohibition on a state's use of both a maximum benefit level and a system of rateable reductions. In fact, this regultion appears to recognize a state's use of both mechanisms. "In the event the state is not able to meet need in full under the adjusted standard [and the adjusted maximum benefit level], the State may make ratable reductions [rateable reductions system] in accordance with paragraph (a)(3)(viii) of this section." This passage requires a state to adjust its standard of need and any maximum benefit levels in accordance to the 1986 amendment. If a state is unable to meet this new standard of need, it may then make rateable reductions. There is no indication that the two authorized approaches are mutually exclusive.

Moreover, the requirement that the rateable reductions be made in accordance with paragraph (a)(3)(viii) of the same section strengthens the assumption that a state is permitted to use both mechanisms simultaneously. Paragraph (a)(3)(viii) reads:

[The state plan must] Provide that payment will be based on the determination of the amount of assistance needed and that, if full individual payments are precluded by maximums or insufficient funds, adjustments will be made by methods applied uniformly statewise.

45 C.F.R. § 233.20(a)(3)(viii).

The "adjustments" that this regulation speaks of are the rateable reductions authorized in 45 C.F.R. § 233.20(a)(2)(ii). Paragraph (a)(3)(viii) requires that these redcuctions be made uniform throughout the state. As this passage indicates, if full payments are made impossible because of *existing* maximums then adjustments (rateable reductions) can be employed provided they are applied uniformly statewide.

These regulations have the effect of forcing states to adjust their standards of need and any maximum benefit levels in response to cost of living increases as of July 1, 1969. The regulations provide for an

alternative method of reducing payments—rateable reductions; and because a system of rateable reductions makes for a more equitable distribution of available funds, these regulations actually encourage states to adopt such a system. As the Supreme Court stated in *Rosado*,

> Lastly, by imposing on those States that desire to maintain "maximums" the requirement of an appropriate adjustment, Congress has introduced an incentive to abandon a flat "maximum" system thereby encouraging those States desirous of containing their welfare budget to shift to a percentage system that will more equitably apportion those funds in fact allocated for welfare and also more accurately reflect the real measure of public assistance being given.

397 U.S. at 413–14, 90 S.Ct. 1218.

The State of Indiana has appropriately responded to those Congressional incentives. First, Indiana has adjusted its standard of need and its maximums to reflect the cost of living increases as of July 1, 1969. Second, Indiana has abandoned its system of maximums only. In its place, Indiana has instituted a system of a newly adjusted standard of need and maximums supplemented with the rateable reductions authorized by the 1968 amendment. By implementing the rateable reductions, Indiana has instituted a system that "will more equitably apportion those funds in fact allocated for welfare." *Id.*

The plaintiffs also rely on the Ninth Circuit Court of Appeals case of *Bryant v. Carleson*, 444 F.2d 353 (1971). But plaintiffs' reliance is nothing more than the "either/or" argument they made based on the language used by the Supreme Court in *Rosado*. The Ninth Circuit case, like *Rosado*, did not involve the specific question raised in the present case. In *Bryant*, the court of appeals overturned a district court's finding that the State of California had effectively decided not to implement rateable reductions and, therefore, the state was required to raise its maximum payment levels. The court found that the district court's order was improper. The

Ninth Circuit emphasized the limited scope of its holding:

> Here we are dealing only with the question of increased dollar maximums. We do not consider whether the will of Congress regarding the requirement of adjusted need determination, is presently being frustrated or affectuated under California's state plan.

444 F.2d at 360.

The *Bryant* court held that the State of California "should have been accorded a reasonable opportunity to use whatever resources are at [its] disposal to formulate and present a plan for compliance before being ordered to make payment increases." *Id.* at 361. The Ninth Circuit recognized that California could adopt a plan on its own that would comply with Congressional mandates. This court finds that Indiana has developed such a plan. First, in response to the 1968 amendment, Indiana adjusted its standard of need and maximum benefit levels to more accurately reflect the cost of living increases at that time. *Rosado*, 397 U.S. at 413–14, 90 S.Ct. at 1218. Second, by adjusting its maximums, Indiana will pay the political consequences of these maximums by notifying the electorate of their existence. *Id.* Third, by employing a system of rateable reductions, Indiana has opted for a system that more equitably allocates its available funds to those eligible. *Id.*

### III.

Finally, in holding that Indiana's AFDC plan is not in violation of Congressional requirements, the court is deferring to the recognized discretion that individual state legislatures are given in this area. "States have considerable latitude in allocating their AFDC resources, since each state is free to set its own standard of need and to determine the level of benefits by the amount of funds it devotes to the program." *Jefferson v. Hackney*, 406 U.S. 535, 541, 92 S.Ct. 1724, 1729, 32 L.Ed.2d 285 (1972) (quoting *King v. Smith*, 392 U.S. 309, 318–19, 88 S.Ct. 2128, 2133–34, 20 L.Ed.2d 1118 (1968)). Also, because the

court finds Indiana's plan is in compliance with the relevant statutes, the court notes that the plaintiffs must look to the Indiana legislature for relief. "So long as [Indiana's] actions are not in violation of any speciic provision of the Constitution or the Social Security Act, [plaintiffs'] policy arguments must be addressed to a different forum." *Jefferson v. Hackney,* 406 U.S. 535, 541, 92 S.Ct. 1724, 1729, 32 L.Ed.2d 285 (1972); *see also Everett v. Schramm,* 772 F.2d 1114, 1122 (3d Cir. 1985).

## CONCLUSION

For the foregoing reasons, plaintiffs' Motion to Amend Judgment is hereby DENIED.