442 F.2d 1119
 3 Fair Empl.Prac.Cas. 471,
3 Fair Empl.Prac.Cas. 55,
3 Empl. Prac. Dec. P 8097, 64 Lab.Cas. P 52,478,
65 Lab.Cas. P 52,554
 Velma L. MENGELKOCH, Mary Fazzio, and Dea C. Kaskela, as
citizens of the United States and of the State of
California, on their own behalf and on behalf of all other
citizens of the State of California similarly situated, appellants,
v.
INDUSTRIAL WELFARE COMMISSION, and North American Aviation,
Inc., acorporation, Appellees.
 No. 23997.
 United States Court of Appeals, Ninth Circuit.
 Jan. 11, 1971.
Rehearing Denied March 26, 1971.
As Amended on Denial of Rehearing May 3, 1971.
 
 Syliva S. Ellison (argued); Caruthers G. Berger (argued), Washington, D.C., Evelyn E. Whitlow, Los Angeles, Cal., for appellants.
 Stephen E. Tallent (argued), of Gibson, Dunn & Crutcher, los Angeles, Cal., Edward M. Belasco (argued), Jay S. Linderman, Deputy Attys. Gen., Thomas C. Lynch, Atty. Gen., San Diego, Cal., Evelle J. Younger, Atty. Gen. of Cal., Los Angeles, Cal.; B. Franklin Walker, Deputy Atty. Gen., San Francisco, Cal., for appellees.
 Before BARNES, HAMLEY and CARTER, Circuit Judges.
 HAMLEY, Circuit Judge:
 
 
 1
 Velma L. Mengelkoch and two other female employees of North American Aviation, Inc., brought this action for injunctive and declaratory relief against that company and Industrial Welfare Commission (Commission), an agency of the State of California. Suing on behalf of themselves and all female employees in similar employement throught California, they seek an adjudication that section 1350 of the Labor Code of the State of California is invalid under the Due Process and Equal Protection Clauses of the Fourteenth Amendment and under section 703(a)(1) and (2) of Title VII of the Civil Rights Act of 1964 (Act), 78 Stat. 255, 42 U.S.C. 2000e-2(a)(1) and (2). In addition, they seek to restrain the Commission from enforcing any of the provisions of section 1350 against the company or any other employer of similarly situated female citizens, and to enjoin the company from violating section 703(a)(1) and (2) of the Act.
 
 
 2
 Section 1350 of the Labor Code of the State of California, as it existed when the suit was filed, provided that no female shall be employed in enumerated establishments and industries, including manufacturing, more than eight hours during any one day of twenty-four hours or more than forty-eight hours in one week.[1] No California statute similarly limits the hours of labor of male employees.
 
 
 3
 Section 703(a)(1) and (2) of the Act reads as follows:
 
 
 4
 '703. (a) It shall be an unlawful employment practice for an employer--
 
 
 5
 '(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, six, or national origin; or
 
 
 6
 '(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunites or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.'
 
 
 7
 Pursuant to 28 U.S.C. 2281, a three-judge court was convened. That court determined that it did not have jurisdiction and entered an order disolving itself. Mengelkoch v. Industrial Welfare Commission, 284 F.Supp. 950 (C.D.Cal.1968). On the same day the single district judge in whose court the case was originally filed, upon consideration of defendants' motions, dismissed the action without prejudice. Mengelkoch v. Industrial Welfare Commission, 284 F.Supp. 956 (C.D.Cal.1968).
 
 
 8
 Mengelkoch, on her own behalf and on behalf of all persons similarly situated, filed a protective appeal with this court from the dicision of the single district judge. She also took an appeal to the Supreme Court from the decision of the three-judge court and from the decision of the single district judge. The Supreme Court dismissed both of those appeals for lack of jurisdiction. A protective appeal was not taken to this court from the decision of the three-judge court dissolving itself. The Supreme Court vacated the latter order and remanded the case to that court so that a timely appeal could be taken to this court from a new three-judge court order dissolving that court. Mengelkoch v. Industrial Welfare Commission, 393 U.S. 83, 89 S.Ct. 60, 21 L.Ed.2d 215 (1968).
 
 
 9
 Upon remand, the three-judge court entered an order dissolving itself for lack of jurisdiction on the grounds stated in the prior reported three-judge decision. One of the plaintiffs, Velma L. Mengelkoch, appeals from the latter order of the three-judge court. As noted above, she, alone, also appealed from the order of dismissal entered by the single district judge.
 
 
 10
 We consider first the appeal from the order of the three-judge court disavowing jurisdiction to entertain the suit.
 
 
 11
 The three-judge court had jurisdiction to entertain the suit if plaintiffs' federal constitutional attack upon section 1350 of the Labor Code of the State of California is not plainly insubstantial. See Swift & Co., Inc. v. Wickham, 382 U.S. 111, 115, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965); Schneider v. Rusk, 372 U.S. 224, 225, 83 S.Ct. 621, 9 L.Ed.2d 695 (1963). A constitutional contention is plainly insubstantial if it is obviously devoid of merit or it its unsoundness so clearly results from the previous decisions of the Supreme Court as "* * * to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy." Ex Parte Poresky, 290 U.S. 30, 32, 54 S.Ct. 3, 4, 78 L.Ed. 152 (1933) quoting Levering & Garrigues Co. v. Morrin, 289 U.S. 103, 105-106, 53 S.Ct. 549, 77 L.Ed. 1062 (1933). The three-judge court relied upon this latter ground in holding that plaintiffs' constitutional attack upon section 1350 is insubstantial.
 
 
 12
 Plaintiffs had alleged that section 1350 is invalid under the Due Process and Equal Protection Clauses of the Constitution. For the purpose of providing a factual premise for this constitutional attack, plaintiffs alleged, in some detail, that during the course of their employment with North American Aviation, Inc., overtime employment was made available to male employees doing the same kind of work, but was withheld from plaintiffs because of section 1350. It was further alleged that the hours' limitation served to deny certain positions of employment to the plaintiffs. While plaintiffs invoked the Due Process Clause as well as the Equal Protection Clause, the basis of their grievance is asserted discrimination against females and in favor of males in the matter of employment. It is too late in the day for plaintiffs to invoke the Due Process Clause for the purpose of testing the wisdom of the legislation. See Ferguson v. Skrupa, 372 U.S. 726, 730, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963).
 
 
 13
 The three-judge court held, in effect, that two Supreme Court decisions to which it referred foreclose plaintiffs' contentions and leave no room for the inference that the constitutionality of the statute can be the subject of controversy. The decisions thus relied upon as settling the issue beyond reasonable debate are Muller v. Oregon, 208 U.S. 412, 28 S.Ct. 324, 52 L.Ed. 551 (1908); and Miller v. Wilson, 236 U.S. 373, 35 S.Ct. 342, 59 L.Ed. 628 (1915).
 
 
 14
 The three-judge court first expressed the view that these decisions settled the issue as of the time they were rendered in 1908 and 1915. The court then noted the lapse of time since these decisions were announced, and reviewed the considerations pro and con on the question of whether modern-day conditions call for a re-examination of Muller and Miller. The three-judge court concluded, however, that unless such changed conditions had led to intervening decisions making it clear that the Supreme Court has abandoned the reasoning of these early decisions, such changed conditions do not lend substantiality to plaintiffs' argued that the state statute is unconstitutional.[2]
 
 
 15
 The landmark Muller case was the first Supreme Court decision to uphold the constitutionality of a state maximum hours law. The Oregon statute there in question provided that no female shall be employed in a mechanical establishment, factory or laundry in that state more than ten hours during any one day. Muller owned a laundry and permitted females to be employed therein more than ten hours on September 4, 1905. He was convicted for violating the statute and fined ten dollars. The Supreme Court of Oregon affirmed the conviction and Muller went to the United States Supreme Court on a writ of error.
 
 
 16
 Muller contended in the Supreme Court that the Oregon statute was unconstitutional on the following grounds: (1) it abridged freedom of contract in violation of the Fourteenth Amendment; (2) it did not apply equally to all persons similarly situated, and is class legislation; and (3) it did not constitute a valid exercise of the police power because there is no necessary or reasonable connection between the limitation prescribed by the Act and the public health, safety or welfare.
 
 
 17
 In its decision, as defendants here correctly point out, the Supreme Court concerned itself primarily with this third contention pertaining to the state's police power although the Court also dealt, to some extent, with the other arguments. The Supreme Court examined the facts pertaining to the place women then held in society. It found factual support for the view that, by reason of their 'physical structure' and their 'performance of maternal functions'; their dependence upon man, as revealed by history; the 'control' over women which men exert by reason of their superior physical strength; the inequality between men and women 'in the struggle for subsistence'; and the disposition of women not to assert their full 'personal and contractual rights,' women are properly placed in a class by themselves subject to legislative protection 'from the greed as well as the passion of man.'
 
 
 18
 Some of the conditions discussed in Muller as warranting exertion of the state's police power still exist, although the relevancy and importance today may not be the same. Women still differ physically from men and still perform maternal functions. It may be seriously questioned, however, whether some or all of the other conditions referred to in the Muller opinion exist today, or if they do exist, whether they have the same importance as was attributed to them sixty-two years ago.
 
 
 19
 Of importance here, however, is the fact that all of these factors were evaluated in Muller primarily for the purpose of determining whether the state, in exerting its police power to the end of establishing maximum hours of labor for women, acted with the wisdom which, in those days, it was thought was required by the Due Process Clause. That kind of inquiry is no longer made by the federal courts. Ferguson v. Skrupa, 372 U.S. 726, 730, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963). Nor is such an issue presented by the appellant in this case.
 
 
 20
 In our case, the constitutional attack against a state statute is mounted, not by an employer, but by an employee. The employee Velma Mengelkoch, unlike the employer in Muller, does not question the state's police power to legislate in the field of hours of labor. Unlike Muller, she invokes the Equal Protection Clause, and she does so not to preserve the right of employers to employ women for long hours, but to overcome what she regards as a system which discriminates in favor of male employees and against female employees. In Muller, the statute was upheld in part because it was though to be a necessary way of safeguarding women's competitive position. Here the statute is attacked on the ground that it gives male employees an unfair economic advantage over females.
 
 
 21
 There is also the further consideration that in Muller, the Supreme Court was required to emphasize differences in the station which men and women occupied in the society of that day, in order to escape the holding in Lochner v. New York, 198 U.S. 45, 25 S.Ct. 539, 49 L.Ed. 937 (1905). This particular reason for placing men and women in differenct categories is now irrelevant. In Lochner, the Court struck down as to men, a New York statute prescribing maximum hours of labor for bakery employees. But the right of states to prescribe the maximum hours of labor by employees, including male employees, has been recognized since at least Bunting v. Oregon, 243 U.S. 426, 37 S.Ct. 435, 61 L.Ed. 830 (1917).
 
 
 22
 Miller v. Wilson, 236 U.S. 373, 35 S.Ct. 342, 59 L.Ed. 628 (1915), also relied upon by the three-judge court, is at least as distinguishable from our case as is the Muller case discussed above. Miller is a criminal case in which an employer, convicted for violating the predecessor of section 1350, challenged that statute as an invasion of liberty of contract and as unreasonably discriminatory, in violation of the Fourteenth Amendment. The asserted discrimination was not that the statute applied only to females, but that it excepted from its application females employed in certain occupations. Miller did not deal with the claim, asserted here by Mengelkoch, that the statute is repugnant to the Equal Protection Clause because it favors men employees over women employees.
 
 
 23
 Despite the distinguishing features to which we have called attention, it may be that, upon full consideration, it would be correct to determine that Muller and Miller require rejection of appellant's constitutional attack upon section 1350. We hold only that such a determination is not so obbious and beyond reasonable debate that the constitutional attack must be regarded as insubstantial.
 
 
 24
 Appellees cite eight additional Supreme Court decisions as so firmly establishing the constitutionality of section 1350 that plaintiffs' attack thereon must be regarded as insubstantial.[3]
 
 
 25
 The determination of whether a particular constitutional attack upon a state statute is insubstantial is directed, in the first instance, to the three-judge court or to the individual district judge in whose court the action is commenced, since it goes to the jurisdiction of the three-judge court. Where the three-judge court or such individual member thereof, has not construed particular Supreme Court decisions as foreclosing reasonable debate, it is questionable whether this court should so hold. But in any event most of the above-described reasons for distinguishing Mueller and Miller from our case are equally applicable with respect to these additional Supreme Court decisions.
 
 
 26
 One of these cases however, is deserving of further comment. In Goesaert v. Cleary, 335 U.S. 464, 69 S.Ct. 198, 93 L.Ed. 163 (1948), the question was whether the Equal Protection Clause barred Michigan from forbidding females, generally, from being barmaids, while making an exception in favor of the wives and daughters of the owners of liquor establishments. While this contention is unlike the constitutional claim plaintiffs here assert, the Goesaert court did say that: '* * * Michigan may deny to all women opportunities for bartending * * *.'
 
 
 27
 But the Court made this pronouncement in the context of its observation that 'the regulation of the liquor traffic is one of the oldest and most untrammeled of legislative powers.' We do not regard Goesaert as establishing, beyond reasonable debate, that a statute limiting the hours of labor of women in general occupations may not be so discriminatory against females as to offend the Equal Protection Clause.
 
 
 28
 We announce no novel principle in observing that statutes, upheld time after time when challenged on one constitutional ground or another, may still be held invalid as impinging upon constitutional rights not previously asserted and adjudicated. Mr. Justice Holmes long ago noted that
 
 
 29
 'laws frequently are enforced which the court recognizes as possibly or probably invalid if attacked by a different interest or in a different way.' Quong Wing v. Kirkendall, 223 U.S. 59, 64, 32 S.Ct. 192, 193, 56 L.Ed. 350 (1912)
 
 
 30
 Only the grounds of attack upon a statute which are actually dealt with in a Supreme Court decision are foreclosed to subsequent examination by an inferior federal court.[4]
 
 
 31
 We conclude that the three-judge court erred in dissolving itself for lack of jurisdiction on the ground that plaintiffs' constitutional attack upon section 1350 is insubstantial.
 
 
 32
 This brings us to a consideration of the order of the single district judge dismissing the action. As it reached the single judge, the action involved only plaintiffs' contention that section 1350 is inconsistent with section 703(a)(1) and (2) of Title VII of the Act, and therefore invalid under the Supremacy Clause.
 
 
 33
 The single district judge dismissed the action without prejudice, on the ground that dismissal was appropriate under the doctrine of abstention. Mengelkoch v. Industrial Welfare Commission, 284 F.Supp. 956 (C.D.Cal.1968). Appellant argues, in effect, that the doctrine is inapplicable because the sole question is one of federal law, namely, whether the state statute, the meaning of which is not in dispute, is inconsistent with the federal statute referred to above.
 
 
 34
 The challenge mounted against section 1350 for its asserted conflict with section 703(a)(1) and (2) of Title VII of the Act is not a challenge 'upon the ground of unconstitutionality' as that phrase is used in 28 U.S.C. 2281. See Swift & Co., Inc. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965). However, plaintiffs' Fourteenth Amendment claims did mount a substantial attack upon section 1350 'upon the ground of unconstitutionality.' Consequently, it was necessary to convene a three-judge court, notwithstanding the fact that plaintiffs also challenged the statute on non-constitutional grounds. Florida Lime and Avocado Growers, Inc. v. Jacobsen, 362 U.S. 73, 85, 80 S.Ct. 568, 4 L.Ed.2d 568 (1960).
 
 
 35
 Once properly convened, a three-judge court has jurisdiction over both the constitutional and non-constitutional issues. Ness Produce Co. v. Short, 263 F.Supp. 586, 588 (D.Ore.1966) aff'd 385 U.S. 537, 87 S.Ct. 742, 17 L.Ed.2d 591 (1967); Sterling v. Constantin, 287 U.S. 378, 393-394, 53 S.Ct. 190, 77 L.Ed. 375 (1932). However, a properly convened three-judge court may determine the non-constitutional question first, leaving the constitutional question for determination only if necessary to dispose of the case. This would be in keeping with the cardinal principle that constitutional questions are to be avoided if the case can be decided on a non-constitutional ground. United States v. Rumely, 345 U.S. 41, 45, 73 S.Ct. 543, 97 L.Ed. 770 (1953). And if the three-judge court determines that the non-constitutional question should be decided first, it may remand that question to the single district judge for determination of that claim. See Rosado v. Wyman, 397 U.S. 397, 403, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970).
 
 
 36
 But here the three-judge court in effect, although erroneously, held that it was not properly convened because there was no substantil federal question. We need not decide whether, absent a remand of the non-constitutional question by the three-judge court, as above described, the single judge district court had jurisdiction to decide the non-constitutional question after the three-judge court erroneously dissolved itself. This determination need not be made because: (1) assuming that the single judge district court then had jurisdiction to decide the non-constitutional question, that court's decision on the question must in any event be reversed because the court rejected the non-constitutional claim on an erroneous ground, and (2) the result is to leave the undecided non-constitutional claim with the reinstated three-judge court which may decide that claim itself or, as indicated above, remand it to the single district judge for that purpose.
 
 
 37
 It remains to be stated why we believe the single judge district court in this case rejected the non-constitutional claim on an erroneous ground. That ground, as noted above, was abstention, advanced by defendants in a motion to dismiss. The non-constitutional claim is that section 1350 of the California Labor Code, establishing maximum hours of labor for females, is in conflict with, and therefore superseded by, section 703(a)(1) and (2) of Title VII of the Civil Rights Act of 1964.
 
 
 38
 There is no contention that section 1350 is ambiguous in any respect. Thus determination of uncertain state law is not a prerequisite to reaching plaintiffs' federal claim. But defendants suggest that section 1350 may be invalid under certain provisions of the Constitution of the State of California. In this connection defendants refer to Article I, sections 11 and 21 of the state constitution, which provide that all laws of a general nature shall have a uniform operation and no citizen or class of citizens shall be granted privileges and immunities not granted to all citizens; Article I, section 1, which provides that all men have certain inalienable rights, including the right to acquire and possess property; and Article 20, section 18, which provides that no person shall, because of sex, be disqualified from entering any vocation, business or profession. The district court appears to have predicated its abstention determination primarily upon the possibility that a California state court might declare section 1350 invalid under these state constitutional provisions.
 
 
 39
 Under some circumstances, the possibility that a state court might declare state statutes invalid under the state constitution provides a basis for abstention which not only may, but should, be applied. See Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970). But here the federal courts are asked to vindicate a specific Congressional policy announced in the Civil Rights Act of 1964. It has been uniformly held that relief under the Civil Rights Act may not be defeated because relief was not first sought under state law which provided a remedy. McNeese v. Board of Education, 373 U.S. 668, 671, 83 S.Ct. 1433., 10 L.Ed.2d 622 (1963); Monroe v. Pape, 365 U.S. 167, 183, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).
 
 
 40
 This principle would not preclude a federal court from awaiting a state court construction of an ambiguous state statute, if there is a reasonable possibility that determination of a federal constitutional question would thereby be avoided. But we think the principle does preclude abstaining from deciding any issue in this case upon the ground that a state court might invalidate the state statute under attack as being inconsistent with the state constitution when, as here, Congress has identified a federal interest in the questions presented by enacting a Civil Rights Act dealing specifically with sex discrimination. Federal policy announced in the Civil Rights Act is too firm, and too urgent, to warrant such leisurely processing of civil rights actions.
 
 
 41
 The judgments under review are reversed and the cause is remanded to the three-judge court for further proceedings consistent with this opinion.
 
 
 
 [1]
 In 1967, an amendatory statute was enacted providing, with exceptions, that employers of employees covered under the provisions of the Fair Labor Standards Act may employ females up to ten hours during any one day of twenty-four hours or up to fifty-eight hours in one week, provided that they are compensated at the rate of one and one-half times the regular rate of pay for time worked for one employer in excess of eight hours in any one day or forty hours in any one week. Section 1350 as amended by Stats.1967, c. 1513, p. 3605, 1. Section 1350.5 added by Stats.1967, c. 1513, p. 3605, 2 and amended by Stats.1968, c. 1342, p. 2562, 1. Defendants do not here argue that the amendments moot the lawsuit and, on this record, we are not inclined to so hold on our own motion
 
 
 [2]
 The three-judge court closed its discussion of the insubstantiality issue as follows:
 'Plaintiffs have not distinguished the issue presented from the one presented in Muller v. Oregon, supra. The principle of stare decisis must ultimately control the decision at the district court level. A Supreme Court decision is as binding as statutory law. The district court, even sitting as a three-judge tribunal, cannot reverse the Supreme Court. When the law has developed through intervening decisions to the point that it has become clear that the Supreme Court has abandoned the reasoning which gave rise to an earlier decision and that the law has in fact changed and all that is needed it recognition, then an inferior court should recognize what is obvious and act accordingly. However, there has been no line of decisions which cast doubt upon the basic holding of Muller. Therefore, this case does not present a substantial constitutional issue. Mere speculation as to what the Supreme Court might do in the light of the changed circumstances will not suffice to take this issue out of the insubstantial category.'
 
 
 [3]
 Listed in the order in which they were decided, these cases are Riley v. Massachusetts, 232 U.S. 671, 34 S.Ct. 469, 58 L.Ed. 788 (1914); Bosley v. McLaughlin, 236 U.S. 385, 35 S.Ct. 345, 59 L.Ed. 632 (1915); Radice v. New York, 264 U.S. 292, 44 S.Ct. 352, 68 L.Ed. 690 (1924); West Coast Hotel Company v. Parrish, 300 U.S. 379, 394-400, 57 S.Ct. 578, 81 L.Ed. 703 (1937); United States v. Darby, 312 U.S. 100, 125, 61 S.Ct. 451, 85 L.Ed. 609 (1941); Ballard v. United States, 329 U.S. 187, 193, 67 S.Ct. 261, 91 L.Ed. 181 (1946); Goesaert v. Cleary, 335 U.S. 464, 69 S.Ct. 198, 93 L.Ed. 163 (1948); Hoyt v. Florida, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118 (1961)
 
 
 [4]
 Of course there are occasions when a prior Supreme Court decision dealing with a constitutional problem has been so eroded by subsequent Supreme Court decisions that an inferior court may hold that the prior opinion is no longer the law. See Hanna v. United States, 104 U.S.App.D.C. 205, 260 F.2d 723, 727 (1958), in which a court of appeals correctly predicted that the Supreme Court would abandon the 'silver-platter' doctrine announced in Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). That doctrine was subsequently abandoned in Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960), and Rios v. United States, 364 U.S. 253, 80 S.Ct. 14318 4 L.Ed.2d 1688 (1960). The three-judge court in this case recognized this principle