**Nan FRANSSEN, et al., Plaintiffs Individually and on behalf of all others similarly situated,**

**v.**

**Andrew JURAS, Administrator of the Public Welfare Division of the State of Oregon, and Jacob Tanzer, Director of the Department of Human Resources of the State of Oregon, Defendants.**

Civ. No. 73–524.

United States District Court, D. Oregon.

May 5, 1975.

Stanley A. Sitnick, Legal Aid Service, Bonnie Mentzer, Michael Millemann, Legal Aid Service, Multnomah Bar Ass'n, Inc., Portland, Or., for plaintiffs.

Lee Johnson, Atty. Gen., Kathryn V. Kelty, Asst. Atty. Gen., Salem, Or., for defendants.

Before GOODWIN, Circuit Judge, and BURNS and EAST, District Judges.

## OPINION

This class action challenges the validity of certain rules the State of Oregon has made concerning Medicaid payments to the sick and the old.[1] Under their provisions, welfare recipients who are institutionalized in nursing homes are presumed, for purposes of determining the amount they will receive, to have available the income and resources of their spouses, who are neither institutionalized nor recipients of assistance, regardless of whether such income and resources are in fact available.

Plaintiffs allege that the State's regulations are invalid under the Supremacy Clause because they are inconsistent with the Social Security Act and the federal regulations thereunder.[2] Plaintiffs also assert that the Oregon provisions offend the two great Clauses of the Fourteenth Amendment: Due Process, because they establish a conclusive presumption not rebuttable upon the facts in particular instances; the Equal Protection, because they create an irrational distinction between institutionalized and non-institutionalized spouses. We hold that the challenged regulations are inconsistent with the Social Security Act and its implementing regulations and, accordingly, are invalid. We need not and do not reach the Plaintiff's Due Process and Equal Protection claims.[3]

---

1. Hereinafter referred to collectively as regulations, the pertinent State pronouncements are Public Welfare Division Rule 7.065 and VIII Public Welfare Division Staff Manual § 8120.1.

2. 42 U.S.C. § 1396a(a)(17) and 45 CFR 248.-21(a)(2)(i).

3. *Ashwander v. TVA*, 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring); *Mengelkoch v. Industrial Welfare Commission*, 442 F.2d 1119 (9th Cir. 1971). Although we do not determine the Fourteenth Amendment questions, our jurisdiction as a three-judge court is properly invoked. Provided Plaintiff's federal constitutional claim is not plainly insubstantial, a three-judge court has jurisdiction over both the constitutional and non-constitutional issues and may dispose of the case solely on the non-constitutional ground. Indeed, we are obliged to adjudicate the statutory claim in preference to the constitutional claim. *Ness Produce Co. v. Short*, 263 F.Supp. 586 (D.Or., 1966), aff'd, 385 U.S. 537, 87 S.Ct. 742, 17

Plaintiffs William Franssen and Gertie Elia were recipients of federally supported categories of public assistance and were residents of nursing homes, where the cost of their care was paid by the federally supported Medical Assistance program. Since this lawsuit was filed, William Franssen has died. Plaintiffs Leonard Elia and Nan Franssen are the spouses of the institutionalized Plaintiffs. They are not recipients of public assistance or institutionalized. The State regulations at issue establish the manner in which the limited income of the latter Plaintiffs is presumed available for the support of the former. Both pairs of named Plaintiffs are representatives, for purposes of this suit, of all other Oregon citizens who are or may be similarly affected. Defendants here are the relevant State of Oregon Public Welfare Division officials.

In accordance with the regulations, the Public Welfare Division determines the maintenance needs of the non-institutionalized spouse according to the current welfare standard. Presently that standard is 92.5% of the amount needed at July 1973 prices to provide basic food, clothing, shelter, and personal incidentals.[4] Expenses the non-institutionalized spouse may actually have for furniture, appliances, bedding, telephone, transportation, medical care, or insurance are not included. Without regard for individual circumstances or economic hardships, any income in excess of the welfare standard is presumed available for support of the institutionalized recipient spouse and is deducted by the Public Welfare Division from its direct payments to the nursing home where the recipient spouse is living.

Enmeshed in the latinate complexities of welfare law is a simple core of fact. Gertie Elia is 54 years old and disabled. She needs the special care of a nursing home, but her monthly grant from the Aid to the Permanently and Totally Disabled program is not enough to pay for it. She gets extra help from Medicaid, in the form of direct payments to the West Linn Nursing Home. Her husband Leonard is 58 and has only $233.05 per month to live on, virtually all from the Social Security check he received because of a heart condition, and must each month dip into his small savings to survive. Without allowance for repairs to the 1967 Plymouth automobile he must use because of his heart or for repairs to the house he and his wife shared until she moved to the nursing home, Leonard Elia is faced with monthly expenses of $251. The mortgage payment, the utility bills, the automobile insurance and gasoline, the food, his own medical expenses, clothing, and a few personal incidentals add up to more than he has. No reasonable prospect exists that his savings will be replenished. Despite this minimal budget and chronic deficit, Leonard Elia is expected to pay $46.01 to the West Linn Nursing Home because the State has determined that his income exceeds the minimum welfare standard and has cut $46.01 from its monthly check to the nursing home. Mr. Elia must choose between the certainty that he cannot provide himself with the necessities of life and the probability that his wife will be evicted from the nursing home because her bills are not being paid. As to Nan Franssen, though the facts and figures are slightly different, her situation vis-a-vis her husband, William, before his death, was equally dismal.

Payments to the nursing homes are made under the Medical Assistance program established by Title XIX of the Social Security Act, commonly known as Medicaid.[5] The parties have stipulated that the Plaintiffs who are institutionalized recipients of assistance and the subclass of other institutionalized persons

---

L.Ed.2d 591 (1967). See also, *Rosado v. Wyman*, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970). *King v. Smith*, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968).

**4.** Public Welfare Division Executive Bulletin 73–74 (June 29, 1973).

**5.** 42 U.S.C. § 1396 et. seq.

whom they represent are "categorically needy" within the definition of Title XIX and so eligible for Medical Assistance.[6] What they dispute is which resources will be counted in deciding how much Medical Assistance to provide.

 When the Medicaid program was created in 1965, Congress directed that state plans for medical assistance, in accordance with which federal funds were to be dispensed, must

> . . . include reasonable standards
> . . . for determining eligibility for and the extent of medical assistance under the plan which . . . (B) provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary [of Health, Education, and Welfare], available to the applicant or recipient . . . (C) provide for reasonable evaluation of any such income or resources.[7]

Department of Health, Education and Welfare regulations follow the statutory direction, requiring that a state medical assistance plan provide

> that only such income and resources as are actually available will be considered and that income and resources will be reasonably evaluated.[8]

Congressional purpose to calculate need with real rather than presumed dollars is evident from the report of the House Ways and Means Committee that accompanied the Medicaid bill.

> These provisions are designed so that the States will not assume the availability of income which may not in fact be available or over-evaluate income and resources which are available. Examples of income assumed include support orders from absent fathers

which have not been paid or contributions from relatives which are not in reality received by the needy individual.[9]

Nonetheless, this prohibition against assuming sources of income is not intended to permit one spouse to spurn a normal obligation to support and assist the other merely by refusing to make contributions. Since financial eligibility for Medicaid is determined by requirements of the categorical assistance programs—Aid to Families with Dependent Children, Aid to the Blind, Aid to the Permanently and Totally Disabled, and Old Age Assistance, as well as the new Supplemental Security Income that absorbs the latter three adult categories—we look to those requirements for guidance as to when income of one spouse may or must be imputed to the other.

Under the former adult categorical assistance programs, income and resources of a spouse could be presumed available "in family groups living together."[10] Under the Supplemental Security Income program, the income and resources of a spouse can be presumed available to a recipient when the spouse is "living with him in the same household."[11] The factual basis for this presumption is plain enough: two persons living in one household enjoy substantial economies by sharing one roof, one hearth, and one mortgage or rental payment. When, however, one spouse needs special care and must live in a nursing home, it appears to us bureaucratically myopic to ignore the economic strain that institutionalization will cause to the spouse who remains at home. Any income the institutionalized spouse has—for example, Gertie Elia's Aid to the Disabled check—will be applied to her or his support in the nursing home and the full

---

**6.** 42 U.S.C. § 1396a(a)(10), as amended by § 13(a)(3) of P.L. 93–233; 42 U.S.C. § 1396a(f), as amended by § 13(c) of P.L. 93–233; 42 U.S.C. § 1396b(f)(4), as amended by § 13(a) (12) of P.L. 93–233.

**7.** 42 U.S.C. § 1396a(a)(17)(B) and (C).

**8.** 45 CFR 248.21(a)(2)(i), 38 F.R. 33382 (Dec. 3, 1973).

**9.** H.R.Rept. 213, 89th Cong., 1st Sess., 67 (1965).

**10.** 45 CFR 233.20(a)(3)(vi)

**11.** 42 U.S.C. § 1382c(f)(1).

burden of household expenses will fall upon the remaining spouse. The State regulations make it impossible to recognize these dislocations, contrary to the mandate of the Social Security Act. Living together does not mean living apart, even in the eye of the Public Welfare Division.

As an alternative foundation for the challenged regulations, the State offers language to Title XIX concerning state plans for financial responsibility of recipients' relatives.[12] The Act's prohibition against imposing financial responsibility in these circumstances on anyone except a spouse will support, the State argues, the conclusion that the spouse *must* be considered responsible and his income and resources be taken into consideration. We believe this foundation cannot bear the weight the State seeks to place upon it. The relevant section is intended to authorize a state mechanism for enforcing financial responsibility of relatives, not to permit presumptions forbidden elsewhere in the statute. Oregon until recently had such a mechanism, but it never applied to Medical Assistance and the Plaintiffs here had incomes well below the level that would have activated a demand for contribution. Nothing in our decision in this case, we should note, prevents the State from re-enacting a relative responsibility law and making it applicable to Medicaid, nor from making and enforcing regulations reasonably evaluating the income and resources actually available. We require only that such efforts to impose responsibility conform to federal law.

█ Because federal law and regulations in federally supported public assistance programs must be controlling, inconsistent state regulations are invalid.[13] Adopting agreed facts in the pre-trial stipulation and order as findings of fact, we find the challenged regulations inconsistent with federal law, and so hold them invalid. Plaintiff should prepare an appropriate form of order.

GOODWIN, Circuit Judge (dissenting):

There are three principal issues implicit in the plaintiffs' Supremacy Clause challenge. First, does 42 U.S.C. § 1396a(a)(17)(D) permit imputation of income from one spouse to another in the absence of a state mechanism for enforcing the financial responsibility of relatives? Second, is the amount imputed under the state scheme reasonable within the meaning of 42 U.S.C. § 1396a(a)(17)(C)? Third, may the state continue to impute income from one spouse to another if one spouse is institutionalized?

With respect to the first issue, 42 U.S.C. § 1396a(a)(17)(D) does permit imputation in the absence of a state enforcement mechanism. Subparagraph (D) provides that a state plan may not "take into account the financial responsibility of any individual for any applicant or recipient of assistance under the plan *unless such applicant or recipient is such individual's spouse * * *.*" (Emphasis added.) There is no suggestion in the language of the statute or the legislative history that a state's ability to "take into account" a spouse's financial responsibility is contingent upon the existence of a state legal mechanism to compel the discharge of that responsibility. Nor does the implementing regulation suggest this. *See* 45 C.F.R. § 248.21(a)(2)(ii) (1973).

Second, the amounts imputed are, under the facts of this case, "reasonable" within the meaning of 42 U.S.C. § 1396a(a)(17)(C). Subparagraph (D) provides for downward adjustment of any imputed amount to reflect "the costs * * * incurred [by the individual] for medical care or for any other type of remedial care recognized under State law." The federal provision fails to specify in any greater detail the manner

---

12. 42 U.S.C. § 1396a(a)(17)(D).

13. *Townsend v. Swank*, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971); *Carleson v. Remil-* *lard*, 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1972).

in which the imputable amount is to be determined. This lack of detail suggests that the draftsmen intended to defer to administrative determinations by the various states, which would presumably be guided by state laws concerning spousal financial responsibility.

If a reasonableness standard applies, the state plan, as implemented in these cases, is reasonable within the meaning of 42 U.S.C. § 1396a(a)(17)(C). The state subtracts from the gross income and resources of the non-institutionalized spouse the basic welfare standard and imputes the remainder to the institutionalized spouse. While it may be myopic for the state to disregard certain financial dislocations inherent in living apart, as well as the realistic cost of car repairs and mortgage payments, this myopia is not inconsistent with the federal scheme. Federal regulations contemplate precisely such a computational technique in analogous evaluations of gross income available to "medically needy" aid recipients or applicants. *See* 45 C.F.R. § 248.-21(a)(3)(i)–(ii) (1973). The same method surely cannot be so "unreasonable" here as to confound the state scheme under the Supremacy Clause.

Any supremacy problem which might arise if a non-institutionalized spouse's income were not adjusted downward to reflect his own medical expenses (*see* 42 U.S.C. § 1396a(a)(17)(D)), is not in issue.

The more difficult issue is whether the "actually available" language of regulations implementing 42 U.S.C. § 1396a(a)(17)(B) cancels out, in effect, the provision of § 1396a(a)(17)(D) permitting states to take certain relative responsibilities into account.

The plaintiffs have conceded that since financial eligibility for Medicaid is determined by requirements of the categorical assistance programs,[1] the exceptions built into those programs with respect to

the presumption of availability of income and resources apply for the purpose of determining the amount of medical assistance. The effect of this concession is to temper the seemingly absolute prohibition against imputation of income not actually made available which emerges from a strict reading of 42 U.S.C. § 1396a(a)(17)(B), the legislative history of this provision,[2] and 42 C.F.R. § 248.-21(a)(2)(i) (1973). Imputation is proper, then, when the spouse of an aid recipient is "living with him in the same household." 42 U.S.C. § 1382c(f)(1).

The next question is whether this exception is to be read literally to preclude imputation when one spouse is institutionalized. The plaintiffs urge that spousal income imputation should be strictly limited to the situation where spouses are living together in the same physical space. They argue that imputation is rational in this situation alone because (1) only when two spouses physically live together do they enjoy economies of scale such as shared rent, and (2) only when they physically live together is actual sharing sufficiently probable to justify the presumption.

Neither of these arguments requires a literal reading of the exception. The first argument goes not to the propriety of imputation *per se* but rather to the method of evaluating any income imputed. While it might be desirable if the state were to recognize in a more realistic and humane manner the financial dislocations caused by institutionalization of a spouse, the state cannot be compelled to do so if the state's evaluation technique is "reasonable" within the meaning of the federal statute.

The plaintiffs make no showing that the likelihood of actual sharing is significantly reduced by an involuntary separation resulting from the institutionalization of one spouse.

---

1. These programs comprise Aid to Families with Dependent Children, Aid to the Blind, Aid to the Permanently and Totally Disabled, and Old Age Assistance, as well as the new Supplemental Security Income program that absorbs the latter three adult categories.

2. *See* H.R.Rep.No. 213, 89th Cong., 1st Sess. 67 (1965); S.Rep.No. 404, 89th Cong., 1st Sess. (1965), U.S.Code Cong. & Admin.News p. 2018.

It is more plausible to read the exception as continuing to apply even after such involuntary separations. If the spouses are physically living together in the same household immediately prior to the institutionalization of one spouse, then the institutionalization must be viewed as a temporary absence from home necessitated by illness. Any other interpretation would allow the non-institutionalized spouse to thwart at will the policy of 42 U.S.C. § 1396a(a)(17)(D), which permits states to take into account spouses' financial responsibility to one another.[3]

I would hold that the challenged regulations are consistent with the Social Security Act and its implementing regulations.

---

3. Statutory language should not be given a literal interpretation when the effect would be to thwart the purpose of the over-all statutory scheme. *See, e. g., United States v. Public Utilities Commission of Calif.*, 345 U.S. 295, 315, 73 S.Ct. 706, 97 L.Ed. 1020 (1953).