David T. Gibbons, J.
This is án action for judgment enjoining the defendant, Robert P. Whalen, M. D., as Commissioner of Health of the State of New York, from making available for *306 public inspection to the intervenor-defendant, Newsday, Inc., or any other members of the news media or the public, copies of or information contained in the surveys and reports now in his possession made by the Joint Commission on Accreditation of Hospitals (JCAH) with respect to hospitals located in the State of New York.
The issue to be determined is whether such hospital survey reports are included as material to be publicly disclosed within the meaning and intent of the Freedom of Information Law (Public Officers Law, § 85 et seq.), and, if so included therein, whether such material may be exempt therefrom as information confidentially disclosed to a State agency under section 88 (subd 7, par b) of the Public Officers Law.
The plaintiff, Nassau-Suffolk Hospital Council, Inc. (Hospital Council), is a not-for-profit corporation located at Syosset, New York, which was organized for the purpose of providing administrative assistance to 18 voluntary hospitals located in Nassau County.
By order dated February 19, 1976, Newsday, Inc., publishers of a newspaper circulated on Long Island, was permitted to intervene herein as a party defendant and was granted leave to serve its answer herein.
Accredited Private Hospital Association of Nassau-Suffolk, Inc. (Accredited), a not-for-profit corporation organized to provide administrative assistance to nine proprietary hospitals located in Nassau and Suffolk Counties, was permitted to intervene as a party plaintiff against the defendant herein by virtue of an order made on February 19,1976.
The Federation of American Hospitals, a not-for-profit corporation, representing the interests of approximately 1,100 investor-owned acute care hospitals, was granted leave, upon the trial, to file an amicus curiae brief in support of plaintiffs.
Member hospitals of the plaintiff, Hospital Council, and of the party plaintiff, Accredited, were accredited by JCAH, and its reports and recommendations in relation to such hospitals were submitted to the defendant, Robert Whalen, M.D., as Commissioner of Health of the State of New York, in connection with their applications for issuance and renewal of their licenses, either in lieu of and to obviate inspections pursuant to article 28 of the Public Health Law by survey teams of the State Department of Health or as part of such State Health Department survey.
*307 JCAH was incorporated in 1951 by representatives of the American Medical Association, the American Hospital Association, the American College of Surgeons, the American College of Physicians and the Canadian Medical Association for the purpose of improving the management, operation and conditions of hospitals. Until that time, and from 1919, this undertaking had been carried on by the American College of Surgeons.
JCAH, in the course of the years, has developed a procedure to obtain an optimum standard of better patient hospital care by systematic inspection of hospitals by its trained survey teams which result in comprehensive survey reports and recommendations for improvement where the same may be advisable. The services provided by JCAH are of a consultive, advisory and educational nature and are made at the request of the hospital seeking its accreditation and the expenses entailed by such survey are paid for by the applicant hospital.
The process is commenced by the filing of a detailed presurvey questionnaire which must be submitted by the requesting hospital in which it is required to set forth the prevailing condition of its plant and medical services. This is followed by an inspection by a survey team which includes a physician, a registered nurse and a licensed hospital administrator.
Accreditation, when granted by JCAH, may be for one year or two years, and when granted, the accompanying critique may contain certain areas of hospital administration and patient care which should be improved in order to achieve an optimum level of performance.
It is agreed between JCAH and the hospital seeking accreditation that the survey report and recommendations shall be kept confidential, and in this regard JCAH agrees not to disclose such report except by the express authority of the hospital. JCAH, however, is permitted to and does disclose, upon public inquiry, whether a specific hospital is accredited or not, and, if so, whether such accreditation is for one year or two years.
By virtue of the Social Security Act (US Code, tit 42, § 1395bb) which provides inter alla, that, if (1), an institution is accredited as a hospital by the Joint Commission on Accreditation and (2), such institution authorizes the commission to release to the Secretary of Health, Education and Welfare (on a confidential basis) upon his request (or such State agency as the secretary may designate) a copy of the most current *308 accreditation survey of such institution made by such commission, then such institution shall be deemed to meet the requirements of the secretary and, thereby, be eligible for Medicare payments for patient care.
Hospital licensing in the State of New York is governed by the provisions of article 28 of the Public Health Law which provides for the issuance of an operating certificate by the State Commissioner of Health after an inspection of the plant and medical facilities as well as the records and charges for services of the hospital seeking such certificate.
The Commissioner of Health’s supervisory powers over hospital operations are contained in the following portions of section 2803 of the Public Health Law:
"1. (a) The commissioner shall have the power to inquire into the operation of hospitals and home health agencies and to conduct periodic inspections of facilities with respect to the fitness and adequacy of the premises, equipment, personnel, rules and by-laws, standards of medical care, hospital service, including health-related service, home health service, system of accounts, records, and the adequacy of financial resources and sources of future revenues. The commissioner or persons designated by him shall each year conduct two or more inspections of each residential health care facility, at least one of which shall be unannounced, to determine the adequacy of care being rendered. * * *
"(b) The purpose of such inspections shall be to determine compliance by residential health care facilities with statutes, and with regulations promulgated under the provisions of those statutes, governing minimum standards of construction, quality and adequacy of care, rights of patients, rates of payment and reimbursement.”
The right to operate a hospital under an operating certificate issued by the Department of Health and the provision for an application therefor is set forth in section 2805 of the Public Health Law as follows:
"1. No hospital shall be operated unless it shall: (a) possess a valid operating certificate issued pursuant to this article, which certificate may specify the kind or kinds of hospital services the facility is authorized to provide; (b) establish and maintain a uniform system of cost analysis approved by the commissioner; and (c) establish and maintain a uniform system of reports and audits meeting the requirements of the commissioner.”
*309 "2. (a) Application for an operating certificate for a hospital shall be made upon forms prescribed by the department. The application shall contain the name of the hospital, the kind or kinds of hospital service to be provided, the location and physical description of the institution, and such other information as the department may require.”
The provisions of the State Hospital Code (10 NYCRR 700.1 et seq.) which were promulgated to effectuate the above-mentioned provisions of the Public Health Law, and insofar as the same may be pertinent to the determination of the instant matter, are as follows:
10 NYCRR 700.2 (1) of the code defines an accredited hospital in the following language: "(1) Accredited hospital or other accredited medical facility as defined in article 28 of the Public Health Law, shall mean a hospital or facility which has been accredited by the Joint Commission on Accreditation of Hospitals [emphasis added], or an osteopathic hospital which has been accredited by the Committee of Hospitals of the American Osteopathic Association.”
10 NYCRR 700.4 of the code authorizes the commissioner to inspect, reproduce or require reports concerning:
"(a) any medical facility record, report or other written document or report to or from an inspecting, accrediting or certifying body which he may require for the purpose of conducting cost analyses and studies of standards and procedures relating to operating certificates, or certificates of approval under the provisions of the Public Health Law; and * * *
"(d) such other medical facility records as may be required.” 10 NYCRR 720.5 of the code mandates that, "(a) the following documents shall be retained on file in the administrative offices of the hospital: * * * (7) the reports of hospital inspections and surveys of outside agencies with statements attached thereto specifying the steps taken to correct any hazards or deficiencies or to carry out the recommendations contained therein”.
Against the foregoing background of governmental supervision and licensing of hospitals by the Department of Health under article 28 of the Public Health Law, and a concurrent system of private professional inspection, accreditation and guidance of hospitals maintained by sectors of the medical profession under the joint commission, it was established at *310 the trial that in August, 1973 the Commissioner of Health promulgated Item 821 of the Hospital Program Manual under which an article 28 survey may be waived by the Department of Health upon submission by an applicant-hospital of its JCAH survey report of accreditation.
Said Item 821 provided in part as follows:
"The Hospital Surveys now conducted by the State Health Department and the Joint Commission on Accreditation of Hospitals (JCAH) raise the potential for a duplication of effort.
"The Department has carefully compared the State Hospital Code, Chapter V, Subchapter C, with the current standards of the JCAH. This comparison shows the two sets of standards to be generally consistent and comparable. Because of this, it seems reasonable to attempt to eliminate any duplication which would occur if separate surveys by JCAH and the Department were performed.
"A separate Article 28 survey may be waived by the Regional or Contract County Health Director based on his review of the findings of the JCAH Survey Report, supplemented by any other appropriate information concerning any operation of the hospital.”
Testimony was given at the trial, on behalf of the plaintiffs, by the executive officers of the Huntington Hospital, the Good Samaritan Hospital at Islip and Nassau Hospital that such medical facilities furnished their JCAH survey reports in compliance with a request by the Department of Health during the course of article 28 surveys, and the same were delivered with the understanding that said records would be held in confidence and not publicly disclosed. The executive officer of the Brookhaven Memorial Hospital testified that, in April, 1975, an operating certificate was issued to the Brook-haven Mémorial Hospital by the Department of Health upon submission of its JCAH survey report in lieu of an article 28 survey in accordance with the proposal contained in the above-mentioned Item 821 of the hospital program manual, and that it was delivered with the understanding that it would be held in confidence.
The instant action was commenced after the Commissioner of Health announced, on December 11, 1975, that he proposed to make available for public review the JCAH survey reports of various hospitals in his possession.
*311 The plaintiffs object to disclosure of such survey reports for the following reasons:
(1) since the joint commission can make informal comments, criticisms and recommendations to the hospitals which it surveys only if they feel free to be open and honest with the joint commission during the survey process, the removal of confidentiality and the disclosure of such survey reports would have the contraproductive effect of frustrating the beneficial purposes of the joint commission by reducing the candor and open discussion between itself and its subscribing hospitals. (This argument represents the underlying concept under which the Federal Aviation Authority, by a specific statute, was given the discretion to prevent public disclosure of its analysis reports relating to commercial airline operation and maintenance performance, and which legislation the Supreme Court of the United States, in Administrator, Fed. Aviation Administration v Robertson [422 US 255], a decision cited by the plaintiffs, held would bar the availability of such analysis reports as "specifically exempted from disclosure by statute” under the Federal Freedom of Information Act, and, further, that such prior legislation was not deemed to have been repealed by implication when the latter act became law.)
(2) that a release of the report itself would not reveal any formal communications from the hospital denying any alleged deficiencies; or that any deficiencies mentioned in the survey report may already have been corrected; and
(3) that under the law, joint commission accreditation is not a prerequisite to the issuance of an operating certificate by the Department of Health.
In the main, the plaintiffs contend that, since the State of New York is required to follow the Federal Medicare and Medicaid statutes and regulations (US Code, tit 42, § 1306, subd [a] and tit 5, § 552, subd [b], par [3]) and because confidentiality is accorded JCAH accreditation survey reports under section 1395bb of title 42 of the United States Code, it, therefore, follows that such Federal statute should apply to this State. This argument is without merit.
The decisions in Townsend v Swank (404 US 282), King v Smith (392 US 309); and Franssen v Juras (406 F Supp 1375) cited by the plaintiffs, represent cases which struck down State laws which, by more stringent eligibility standards, attempted to exclude or diminish financial benefits conferred *312 by the Federal Government under the Social Security Act. Such authorities have no application to the instant matter.
The mere fact that a hospital, licensed and operating in this State, may be qualified to receive Federal Medicare funds by virtue of its JCAH accreditation does not mean that the confidentiality afforded to its JCAH survey report by virtue of section 1395bb of title 42 of the United States Code creates a similar immunity from disclosure under State law.
If there is to be any exemption from publication of such survey reports, such protection from disclosure must be found within the laws of this State.
The only restrictions imposed by the Freedom of Information Law under such circumstances are found in subdivision 7 of section 88 of the Public Officers Law which provides as follows:
"7. Notwithstanding the provisions of subdivision one of this section, this article shall not apply to information that is:
"a. specifically exempted by statute;
"b. confidentially disclosed to an agency and compiled and maintained for the regulation of commercial enterprise, including trade secrets, or for the grant or review of a license to do business and if openly disclosed would permit an unfair advantage to competitors of the subject enterprise, but this exemption shall not apply to records the disclosure or publication of which is directed by other statute; or
"e. if disclosed, an unwarranted invasion of personal privacy, pursuant to the standards of subdivision three of this section.
"d. part of investigatory files compiled for law enforcement purposes.”
There is presently no statute in the State of New York which would specifically exempt JCAH survey reports from public disclosure as contemplated by paragraph a above. The only provision which could apply to the issues raised herein is set forth in paragraph b above.
The language contained in paragraph b of subdivision 7 is also set forth in paragraph B(l) of the General Administrative Manual, Item 85, dated November 5, 1975 under title, "Records Not Required to Be Made Available”.
From the evidence adduced at the trial, the court finds that prior to 1974 it was the policy of the Department of Health not to disclose any of the survey reports in its possession.
*313 Following the effective date of the Freedom of Information Law (Public Officers Law, § 88 et seq), it became the policy of the Department of Health, under the said law and its guidelines, on requests made after September 1, 1974, to make available for public disclosure its article 28 survey reports. However, during this period the department continued not to make available to the public any JCAH survey reports in its possession. In this connection, Dr. Albert L. De Martino, regional director of the White Plains regional office of the Department of Health (which supervises hospitals in nine counties including Nassau and Suffolk Counties) testified that he followed this policy as expressed in a communication from the office of counsel of the Department of Health to the effect that, if the JCAH survey report was not actually incorporated in the article 28 survey report, it was not disclosable.
Thereafter, in the late part of 1974 or early in 1975, said regional director testified that the policy of the department was changed to permit all survey reports both under article 28 and JCAH to be made available for public disclosure. He testified that when requests were received by him to make available the article 28 and JCAH survey reports in his possession at that time, he declined to release the latter survey report after consultation with the central office and office of counsel of the Department of Health.
After such requests persisted he stated he was informed that there was correspondence between a Mr. Rubin of a consumer organization and Dr. Kevin Cahill, Special Assistant to the Governor on health affairs, in which the latter stated that such information would, henceforth, be available if contact was made with the White Plains regional office. (This correspondence was not offered in evidence.) He confirmed this information by conferring with Doctor Endicott, Deputy Commissioner, and Mr. Douglas Eitel, Director of the Bureau of Hospital Affairs, who advised him that JCAH survey reports would be disclosable upon request if such reports were delivered in confidence, and he then wrote to the Commissioner of Health of Nassau and Suffolk Counties advising that JCAH survey reports may be released except those of Long Beach Hospital and Mercy Hospital.
When the witness was asked why the JCAH survey reports of these two hospitals were not to be made available, he said that such determination resulted from conversations between his office, the central office and the Nassau County Health *314 Department to see if there were any kind of specific, either verbal or written, communication between the hospital and the Nassau County Department of Health survey personnel who were involved, to show the JCAH survey reports were received by them under condition of confidentiality.
In a letter dated December 8, 1975 from Dr. David H. Ross, Medical Director of the Office of Hospital Affairs of the Department of Health to Dr. Albert L. De Martino, Regional Health Director, the former makes the following comment in relation to the decision not to make available the JCAH survey reports of the Long Beach and Mercy Hospitals: "Verbal assurances of confidentiality were given by Ray Lowe to the Administrators of Long Beach Memorial Hospital and also Mercy Hospital, the latter of which confirmed in writing, per letter attached (mentioned above). In addition, Mr. Lowe feels that there was an implicit understanding of conñdentiality, and based upon this assumption, copies of the JCAH reports were furnished to us by all the other Nassau County hospitals. ” (Emphasis added.)
The "Mr. Lowe”, referred to in said letter, is the Administrative Assistant, Office of Hospital Affairs of the Nassau County Department of Health.
Although there was testimony by Dr. Douglas Eitel, Director of the Bureau of Hospital Services, that it became the policy of the department to grant confidentiality to the JCAH survey reports only where there was a promise in writing, the record herein does not reveal any definitive departmental directive to this effect. The above-mentioned letter confirms the policy to be that confidentiality would attach whether the assurance was oral or in writing.
The only evidence received in this case touching upon the circumstances under which confidentiality will attach to a JCAH survey report is contained in paragraph B2 of the General Administration Manual of the Department of Health.
Accordingly, the court finds the expressed policy of the Department of Health to be as therein stated, which is in fact a recital of section 88 (subd 7, par b) of the Public Officers Law.
It is, therefore, the determination of the court, consonant with the said provisions of the Freedom of Information Law:
(1) that all JCAH survey reports delivered, in confidence, to the Department of Health, whether submitted (a) in lieu of an *315 article 28 survey, or (b) in connection with such survey, shall not be available for public disclosure;
(2) that all JCAH survey reports delivered to the Department of Health without such agreement of confidentiality may be available for public disclosure.
However, inasmuch as the scope of this action, as alleged in the complaints, embraces all JCAH survey reports delivered to the Department of Health pertaining to the many hospitals situated throughout the State who are not parties to this action, it is the determination of this court that, before the defendant, Robert P. Whalen, M. D., as Commissioner of Health of the State of New York, shall make such report available for public disclosure, he shall notify each respective hospital to which such report refers that he proposes to take such action and afford such hospital an opportunity to be heard on the question as to whether the same was delivered under conditions of confidentiality.